# DARR *v.* BURFORD, WARDEN.

No. 51.   Submitted December 5, 1949.—Decided April 3, 1950.

*John B. Ogden* submitted on brief for petitioner.

*Mac Q. Williamson,* Attorney General of Oklahoma, and *Sam H. Lattimore,* Assistant Attorney General, submitted on brief for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner Darr, an inmate of the Oklahoma state penitentiary, has been denied federal habeas corpus for failure to exhaust his other available remedies. Petitioner's omission to apply here for certiorari from the state court's denial of habeas corpus was held an error, fatal to consideration on the merits. Therefore the merits of petitioner's claims of imprisonment in violation of the Constitution are not before us. The petition for certiorari requires us to pass solely upon the correctness of the lower court's view that ordinarily a petition for certiorari must be made to this Court from a state court's refusal of collateral relief before a federal district court will consider an application for habeas corpus on its merits.

Petitioner was serving a term in the Oklahoma state penitentiary when, on November 28, 1930, he was summoned to appear in another Oklahoma county to plead to two separate charges of armed bank robbery. In January of 1931, he was tried by jury, and convicted on the first charge; petitioner then pleaded guilty to the second. He was sentenced to two terms of forty years each, to run consecutively, and the first sentence is now being served.

No appeal from the conviction was taken, but in 1947 petitioner applied to the Oklahoma Court of Criminal Appeals for habeas corpus. Judging only from the state court's opinion,[1] for the original petition is not included in the record before us, petitioner alleged in the state court that he had been without funds to employ counsel, that he had not had the aid of counsel of his own choosing, and had not been provided sufficient time to procure and prepare witnesses for his defense. These allegations were reviewed by the state court and the writ was denied on the merits. No application for certiorari was made here.

Petitioner then filed in the United States District Court for the Eastern District of Oklahoma the application for habeas corpus here at bar. The allegations were those passed upon by the Oklahoma Court of Criminal Appeals, with the addition of a claim that petitioner's plea of guilty to the second armed robbery charge had been coerced. After hearing petitioner's testimony in open court, the District Judge examined into the merits sufficiently to assure himself that no extraordinary circumstances existed sufficient to justify federal inquiry into the merits of petitioner's allegations without the exhaustion of all other available remedies.[2] He then concluded that the writ must be discharged as to the first sentence since petitioner had not applied for certiorari here from the state court's denial of habeas corpus. The allegations of a coerced plea underlying the second sentence could not properly be considered, held the court, first, because petitioner had not raised the point in the state proceeding, and further because petitioner is not presently being detained under that sentence. Therefore no adjudication on the merits was given.[3] The Court of Appeals for the

---

[1] *Ex parte Darr,* 84 Okla. Cr. 352, 182 P. 2d 523.

[2] 77 F. Supp. 553, 556.

[3] 77 F. Supp. 553.

Tenth Circuit affirmed, one judge dissenting from the proposition that application for certiorari is a requisite step in the exhaustion of remedy.[4]

It is not argued that the courts below state the law incorrectly insofar as the second conviction is concerned. It has long been settled that the federal courts will not consider on habeas corpus claims which have not been raised in the state tribunal;[5] and in any event, it is unquestioned doctrine that only the sentence being served is subject to habeas corpus attack.[6] Further, since neither court based its conclusion upon petitioner's failure to appeal from his initial conviction, that issue is not before us. There is no problem of jurisdiction or power in the federal courts to consider applications for habeas corpus. Nor is there at issue the effect of a refusal of certiorari by this Court upon future applications for federal habeas corpus by the state prisoner. The issue of exhaustion of remedy, however, is not only of vital concern to those who would seek the protection of the Great Writ, but in the case of state prisoners is crucial to the relationship between the state and federal sovereignties in the exercise of their coordinate power over habeas corpus. Doubt respecting this issue should not go unresolved. We therefore granted certiorari. 337 U. S. 923.

The writ of habeas corpus commands general recognition as the essential remedy to safeguard a citizen against imprisonment by State or Nation in violation of his constitutional rights.[7] To make this protection effective for unlettered prisoners without friends or funds, federal courts have long disregarded legalistic requirements in examining applications for the writ and judged the papers

---

[4] 172 F. 2d 668 (C. A. 10th Cir.).

[5] *Davis* v. *Burke,* 179 U. S. 399.

[6] *McNally* v. *Hill,* 293 U. S. 131.

[7] *Hawk* v. *Olson,* 326 U. S. 271, 274.

by the simple statutory test of whether facts are alleged that entitle the applicant to relief.[8]

This favorable attitude toward procedural difficulties accords with the salutary purpose of Congress in extending in 1867 the scope of federal habeas corpus beyond an examination of the commitment papers under which a prisoner was held to the "very truth and substance of the causes of his detention." [9]   Through this extension of the boundaries of federal habeas corpus, persons restrained in violation of constitutional rights may regain their freedom.   But, since the 1867 statute granted jurisdiction to federal courts to examine into alleged unconstitutional restraint of prisoners by state power, it created an area of potential conflict between state and federal courts.   As it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, the federal courts sought a means to avoid such collisions.   Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.[10]

Since habeas corpus is a discretionary writ, federal courts had authority to refuse relief as a matter of comity until state remedies were exhausted.   Through this

---

[8] Holiday v. Johnson, 313 U. S. 342, 350; Price v. Johnston, 334 U. S. 266, 291–92; 28 U. S. C. § 2242, restating R. S. § 754.

[9] See Hawk v. Olson, supra, pp. 274–75, notes 3, 4.

[10] Comity through discretion in granting habeas corpus had an antecedent in an early statutory command restraining federal injunctive interference with state courts.   28 U. S. C. § 2283; 1 Stat. 334, § 5; see Bowles v. Willingham, 321 U. S. 503.   Cf. the three-judge district court provisions, 28 U. S. C. §§ 2281, 2284.

comity, the doctrine of exhaustion of state remedies has developed steadily from cases refusing federal habeas corpus before state trial to a statutory direction that federal courts shall not grant the writ to a state prisoner until state remedies have been exhausted. *Ex parte Royall,*[11] decided in 1886, held that a federal district court had jurisdiction to release before trial a state prisoner who was held in violation of federal constitutional rights, but it approved denial of the writ as a matter of discretion. It was not to be presumed that "the decision of the State court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court . . . ."[12] Analogy was found in earlier cases where state and federal jurisdiction to attach property had been found to overlap. Apropos were the words of the Court in *Covell* v. *Heyman:* [13]

> "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between State courts and those of the United States, it is something more. It is a principle of right and of law, and therefore, of necessity."

In the same term of court the doctrine was advanced to its next stage, for in *Ex parte Fonda* [14] the prisoner sought his federal relief in this Court after his state conviction but before he had prosecuted his appeal to the state appellate tribunal. Stressing the importance of noninterference

[11] 117 U. S. 241.
[12] 117 U. S. 241, 252; *Cook* v. *Hart,* 146 U. S. 183.
[13] 111 U. S. 176, 182.
[14] 117 U. S. 516.

with the orderly processes of appellate review, this Court denied the writ, for if the trial court had erred to the prejudice of petitioner's constitutional rights, it could not be assumed that the state appellate court would suffer the error to go uncorrected.[15]

The established doctrine was applied to meet the variations presented by the cases. By 1891, it was clear that a federal circuit court committed no error in refusing a writ on the ground that the petitioner had not come to this Court on writ of error;[16] and a great body of cases affirmed this holding that the petitioner should be "put to his writ of error."[17] *Baker* v. *Grice*[18] states the reason for the rule that after a final determination of the case by the state court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this Court.

> ". . . It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, upon a writ of *habeas corpus,* be taken out of the custody of the officers of the State and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a State be finally prevented."

And to this the Court added, in *Markuson* v. *Boucher*,[19] the explicit reason why the exhaustion principle must

---

[15] *In re Duncan,* 139 U. S. 449, 454.

[16] *In re Wood,* 140 U. S. 278.

[17] *In re Jugiro,* 140 U. S. 291; *In re Frederich,* 149 U. S. 70, 77–78; *New York* v. *Eno,* 155 U. S. 89, 98; *Pepke* v. *Cronan,* 155 U. S. 100; *Whitten* v. *Tomlinson,* 160 U. S. 231, 242; *Tinsley* v. *Anderson,* 171 U. S. 101, 104–105; *Minnesota* v. *Brundage,* 180 U. S. 499, 503; *Reid* v. *Jones,* 187 U. S. 153; *Urquhart* v. *Brown,* 205 U. S. 179, 181–82; *United States ex rel. Kennedy* v. *Tyler,* 269 U. S. 13, 17.

[18] 169 U. S. 284, 291.

[19] 175 U. S. 184, 187.

extend to remedies available in this Court as well as those open in the state tribunals.

> "The jurisdiction is more delicate, the reason against its exercise stronger, when a single judge is invoked to reverse the decision of the highest court of a State in which the constitutional rights of a prisoner could have been claimed . . . ."

In 1913, a petitioner was denied an original writ here even though he had appealed and had applied for state habeas corpus, with the comment that writ of error to this Court was required.[20] And following next upon the heels of an adjudication that a state habeas corpus action is a "suit" yielding a final reviewable judgment,[21] came the leading case of *Mooney* v. *Holohan*,[22] clearly establishing the rule that available collateral attacks in the state tribunals must be exhausted in addition to direct attacks on the conviction.[23] In 1944 the unanimous *per curiam* opinion of *Ex parte Hawk* stated the fully developed and established exhaustion doctrine in its most frequently quoted form.[24]

> "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted."

---

[20] *Ex parte Spencer*, 228 U. S. 652, 660–61.

[21] *Bryant* v. *Zimmerman*, 278 U. S. 63, 70.

[22] 294 U. S. 103.

[23] The point has been confirmed many times. *Ex parte Botwinski*, 314 U. S. 586; *Ex parte Davis*, 317 U. S. 592; *Ex parte Williams*, 317 U. S. 604; *Ex parte Abernathy*, 320 U. S. 219; and see cases cited in note 25, *infra*.

[24] 321 U. S. 114, 116–17.

The doctrine of *Ex parte Hawk* has been repeatedly approved,[25] and in *White* v. *Ragen* the same Court again unanimously restated that principle in the clearest language.[26]

> "Where the highest state court in which a decision could be had considers and adjudicates the merits of a petition for habeas corpus, state remedies, including appellate review, are not exhausted so as to permit the filing of a petition for habeas corpus in a federal district court, unless the federal question involved is presented to this Court on certiorari or appeal from the state court decision."

Thus comity, which had constrained the lower federal courts to refuse a grant of the Great Writ when remedies in state courts were still open, brought forth the related rule that lower federal courts ordinarily will not allow habeas corpus if the applicant has not exhausted his remedy in this Court by certiorari or appeal from state courts' refusal of relief on collateral attack.

In *Wade* v. *Mayo* alone,[27] a case decided less than four years later, does there appear language that may be construed as a departure from the established rule. The District Court was allowed to hear Wade's petition for habeas corpus even though he had not applied here for certiorari, because there was grave doubt whether the state judgment constituted an adjudication of a federal question. The Court said, at p. 682:

> "That doubt was such as to make it reasonably certain that this Court would have denied certiorari on the theory that an adequate state ground ap-

---

[25] *White* v. *Ragen,* 324 U. S. 760, 767; *House* v. *Mayo,* 324 U. S. 42, 46, 48; *Marino* v. *Ragen,* 332 U. S. 561, 564; *Wade* v. *Mayo,* 334 U. S. 672, 679; *Young* v. *Ragen,* 337 U. S. 235, 238. And see note 32, *infra.*

[26] 324 U. S. 760, 764.

[27] 334 U. S. 672.

peared to underlie the judgment. His failure to make this futile attempt to secure certiorari accordingly should not prejudice his subsequent petition for *habeas corpus* in the District Court."

We had pointed out in *White* v. *Ragen, supra,* a *per curiam* expressly reiterating the *Hawk* doctrine, that where a state court's "decision is based upon some other adequate non-federal ground, it is unnecessary for the petitioner to ask this Court for certiorari in order to exhaust his state remedies, since we would lack jurisdiction to review the decision of the state court." [28]

Not limiting its discussion to the holding on the *Hawk* exception, however, *Wade* also treated with the general *Hawk* rule of the necessity for review here before seeking the writ in the federal district court. The thought behind the language on that point evidently was that review here is not usually required as a condition to a hearing on the merits in the district court. *Wade* did recognize that failure to come here might be relevant in determining whether a district court should entertain an application. On p. 680 it is said:

"After state procedure has been exhausted, the concern is with the appropriate federal forum in which to pursue further the constitutional claim. The choice lies between applying directly to this Court for review of the constitutional issue by certiorari or instituting an original *habeas corpus* proceeding in a federal district court. Considerations of prompt and orderly procedure in the federal courts

---

[28] 324 U. S. 760, 765. In the *White* case we concluded that the state ground was the refusal by the Supreme Court of Illinois to entertain applications with possible fact controversies. Pp. 766–67. We made it clear that while proper procedure does not require review in this Court of a judgment denying habeas corpus on an adequate state ground, other available state remedies must be exhausted before an application should be entertained in a district court. P. 767.

> will often dictate that direct review be sought first in this Court. And where a prisoner has neglected to seek that review, such failure may be a relevant consideration for a district court in determining whether to entertain a subsequent *habeas corpus* petition."

We do not stop to reexamine the meaning of *Wade's* specific language. Whatever deviation *Wade* may imply from the established rule will be corrected by this decision.

*Ex parte Hawk* prescribes only what should "ordinarily" be the proper procedure; all the cited cases from *Ex parte Royall* to *Hawk* recognize that much cannot be foreseen, and that "special circumstances" justify departure from rules designed to regulate the usual case. The exceptions are few but they exist.[29] Other situations may develop. Compare *Moore* v. *Dempsey,* 261 U. S. 86. Congress has now made statutory allowance for exceptions such as these, leaving federal courts free to grant habeas corpus when there exist "circumstances rendering such [state] process ineffective to protect the rights of the prisoner." 28 U. S. C. § 2254.

In § 2254 of the 1948 recodification of the Judicial Code, Congress gave legislative recognition to the *Hawk* rule for the exhaustion of remedies in the state courts and this Court.[30] This was done by embodying in the new statute

---

[29] See *White* v. *Ragen,* 324 U. S. 760; *Ex parte Royall,* 117 U. S. 241, 251.

[30] *Young* v. *Ragen,* 337 U. S. 235, 238. 28 U. S. C. § 2254 reads:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies

the rulings drawn from the precedents.[31]   The rulings had been definitively restated in *Hawk*.   That case had represented an effort by this Court to clear the way for prompt and orderly consideration of habeas corpus petitions from state prisoners.   This Court had caused the *Hawk* opinion to be distributed to persons seeking federal habeas corpus relief from state restraint and the opinion had been generally cited and followed.[32]   There is no doubt that Congress thought that the desirable rule drawn from the existing precedents was stated by *Hawk*, for the statutory reviser's notes inform us that

> "This new section is declaratory of existing law as affirmed by the Supreme Court.   (See *Ex parte Hawk*, 1944, 64 S. Ct. 448, 321 U. S. 114, 88 L. Ed. 572.)"[33]

While this section does not refer expressly to the requirement for application to this Court for review, it must be read in the light of the statement quoted on p. 207, *supra*, from *Hawk*.   So read, there was occasion nei-

---

available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

[31] Hearings before a Subcommittee of the Senate Judiciary Committee on H. R. 3214, April 22 to June 7, 1948, 80th Cong., 2d Sess., p. 28.   See 28 U. S. C. Congressional Service, p. XXVIII; H. R. Rep. No. 308 on H. R. 3214, 80th Cong., 1st Sess., p. 3.

[32] See *Lyon* v. *Harkness*, 151 F. 2d 731, 733 (C. A. 1st Cir., N. H.); *United States ex rel. Monsky* v. *Warden of Clinton State Prison*, 163 F. 2d 978, 980 (C. A. 2d Cir., N. Y.); *Stonebreaker* v. *Smyth*, 163 F. 2d 498, 501, 502 (C. A. 4th Cir., Va.); *Nusser* v. *Aderhold*, 164 F. 2d 127 (C. A. 5th Cir., Ga.); *Makowski* v. *Benson*, 158 F. 2d 158 (C. A. 6th Cir., Mich.); *United States ex rel. Ross* v. *Nierstheimer*, 159 F. 2d 994 (C. A. 7th Cir., Ill.); *Guy* v. *Utecht*, 144 F. 2d 913, 915 (C. A. 8th Cir., Minn.); *Gordon* v. *Scudder*, 163 F. 2d 518 (C. A. 9th Cir., Cal.); *Herzog* v. *Colpoys*, 79 U. S. App. D. C. 81, 143 F. 2d 137, 138.

[33] See S. Rep. No. 1559, 80th Cong., 2d Sess., p. 9 and H. R. Rep. No. 308, 80th Cong., 1st Sess., p. A180.

ther for the draftsmen of § 2254 to make reference to review in this Court, nor for the committees of the House or Senate or members of Congress to comment upon it. It is immaterial whether as a matter of terminology it is said that review in this Court of a state judgment declining relief from state restraint is a part of the state judicial process which must be exhausted, or whether it is said to be a part of federal procedure. The issue cannot be settled by use of the proper words. *Hawk* treated review here as a state remedy. *Wade* thought it was not state procedure. But undoubtedly review here is a part of the process by which a person unconstitutionally restrained of his liberty may secure redress. *Ex parte Hawk* had made it clear that all appellate remedies available in the state court and in this Court must be considered as steps in the exhaustion of the state remedy in the sense that the term is used, perhaps inexactly, in the field of habeas corpus.[34] Consideration of the legislative

---

[34] Subsequent statements by Judge John J. Parker, who served as Chairman of the Judicial Conference of Senior Circuit Judges, Committee on Habeas Corpus, are instructive.

". . . The thing in mind in the drafting of this section was to provide that review of state court action be had so far as possible only by the Supreme Court of the United States, whose review of such action has historical basis, and that review not be had by the lower federal courts, whose exercise of such power is unseemly and likely to breed dangerous conflicts of jurisdiction. . . .

"One of the incidents of the state remedy is [the] right to apply to the Supreme Court for certiorari. If a petitioner has failed to make such application after the refusal of the state court to release him, he cannot be said to have exhausted the remedies available to him under state procedure, provided he has the right to apply again to the state courts for relief as a basis for application to the Supreme Court for certiorari. . . .

"The fact that certiorari from the Supreme Court to the state court may be called a federal remedy is not determinative of the question here involved. The crucial matter is that petitioner still has a right to attack in the courts of the state the validity of his

history of § 2254 reveals no suggestion that the draftsmen intended to alter the sense of the term as defined in *Hawk* or to differentiate between exhaustion of state remedies and review in this Court. All the evidence manifests a purpose to enact *Hawk* into statute. The reviser's notes, explicitly stating this purpose, remained unchanged throughout the bill's legislative progress.[35] So did the statement of the exhaustion principle contained in the first paragraph of § 2254 down to the first "or." [36] None of the changes or additions made by the Senate to § 2254 affected the problem of review here. They were directed at other issues.[37]

conviction and, upon the record made in such attack, to petition the highest court of the land for a review. So long as such right remains, he does not have, and ought not have, the right to ask a review by one of the lower federal courts. . . ." Parker, Limiting the Abuse of Habeas Corpus, 8 F. R. D. 171, 176–77.

*Wade* v. *Mayo, supra,* had no effect on the discussion of § 2254, since it came down two days prior to the enactment of the new code, too late for consideration.

[35] See H. R. Rep. No. 308, 80th Cong., 1st Sess., p. A180, and final reviser's note to § 2254.

[36] See note 30, *supra.* Compare § 2254, H. R. 3214, Union Calendar #140, H. R. Rep. No. 308, 80th Cong., 1st Sess., with § 2254, H. R. 3214 in Senate, S. Rep. No. 1559, 80th Cong., 2d Sess., p. 9.

[37] The two exceptions at the last of the first paragraph provide for particular situations in the states. The definition of exhaustion in the last paragraph was made by the Senate at the instance of the Judicial Conference of Senior Circuit Judges. S. Rep. No. 1559, 80th Cong., 2d Sess., p. 9. Report of the Judicial Conference, September Session 1947, p. 17.

H. R. 3214 had permitted federal habeas corpus not only where state remedies had been exhausted but where "there is no adequate remedy available in" the state court. The Senate Report informs us that the purpose of the Senate amendment was "to substitute detailed and specific language for the phrase 'no adequate remedy available.' That phrase is not sufficiently specific and precise, and its meaning should, therefore, be spelled out in more detail in the section as is done by the amendment." S. Rep. No. 1559, 80th Cong., 2d Sess., p. 10.

It seems sure that Congress drafted and enacted § 2254 expecting review here in conformity with the *Hawk* rule. Nothing indicates to us a desire on the part of Congress to modify the language. We think the rule of the *Hawk* case that ordinarily requires an effort to obtain review here has been accepted by Congress as a sound rule to guide consideration of habeas corpus in federal courts.

There is an insistence voiced by the dissent that we determine what effect the lower federal courts should accord a denial of certiorari by this Court when the state prisoner later applies for federal habeas corpus. The issue of the effect of such a denial apparently could arise only in a case where, after our refusal, the state prisoner presented his application to another federal court. It is not here in this case. We doubt the effectiveness of a voluntary statement on a point not in issue.[38] Whether a refusal to grant certiorari imports an opinion on any issue or not, the reason persists for requiring an application here from the state refusal before application to another federal court.

There should be no controversy over whether the refusal of certiorari "would serve the purpose of an adjudication on the merits." All the authorities agree that *res judicata* does not apply to applications for habeas corpus. The courts must be kept open to guard against injustice

---

[38] Compare Bowen, L. J., in *Cooke* v. *New River Co.*, 38 Ch. D. 56, 70–71: ". . . like my Brothers who sit with me, I am extremely reluctant to decide anything except what is necessary for the special case, because I believe by long experience that judgments come with far more weight and gravity when they come upon points which the Judges are bound to decide, and I believe that *obiter dicta*, like the proverbial chickens of destiny, come home to roost sooner or later in a very uncomfortable way to the Judges who have uttered them, and are a great source of embarrassment in future cases." *Cohens* v. *Virginia*, 6 Wheat. 264, 399–400; *Wright* v. *United States*, 302 U. S. 583, 593–594.

through judicial error.[39]  Even after this Court has declined to review a state judgment denying relief, other federal courts have power to act on a new application by the prisoner.[40]  On that application, the court may require a showing of the record and action on prior applications, and may decline to examine further into the merits because they have already been decided against the petitioner.[41]  Thus there is avoided abuse of the writ by repeated attempts to secure a. hearing on frivolous grounds, and repeated adjudications of the same issues by courts of coordinate powers.

In this way the record on certiorari in this Court is brought to the attention of the trial court.  There have been statements made in former opinions of this Court as to the effect of denial of petitions for habeas corpus.[42]  Records presented to this Court on petitions in habeas corpus cases raise many different issues.  There may be issues of state procedure, questions of fact regarding the alleged violations of constitutional rights, and issues of law respecting the scope of constitutional rights—problems made difficult by the frequent practice of state courts to dismiss the applications without opinion.  If this Court has doubts concerning the basis of state court judgments, the matter may be handled as in *Burke* v. *Georgia,* 338 U. S. 941, with an express direction that the petitioner may proceed in the federal district court without prejudice from the denial of his petition for certiorari.  If the District Court feels that error may have occurred, it has power to examine the application to see if circumstances exist to justify it in holding a hearing on the

[39] *Salinger* v. *Loisel,* 265 U. S. 224, 230.

[40] *Ex parte Royall,* 117 U. S. 241.

[41] *Salinger* v. *Loisel,* note 39, *supra.*

[42] *Ex parte Hawk,* 321 U. S. 114, 117; *House* v. *Mayo,* 324 U. S. 42, 48; *White* v. *Ragen,* 324 U. S. 760, 764–65.

merits.   Such freedom of action protects the Great Writ without trivializing it.[43]

But it is argued that if the denial of certiorari mean nothing, the result of our decision is to force a "meaningless step."   We do not agree.   Though our denial of certiorari carry no weight in a subsequent federal habeas corpus proceeding, we think a petition for certiorari should nevertheless be made before an application may be filed in another federal court by a state prisoner. The requirement derives from the basic fact that this republic is a federation, a union of states that has created the United States.   We have detailed the evolution of and the reason for the conclusion that the responsibility to intervene in state criminal matters rests primarily upon this Court.   It is this Court which ordinarily should reverse state court judgments concerning local criminal administration.   The opportunity to meet that constitutional responsibility should be afforded. Even if the District Court may disregard our denial of certiorari, the fact that power to overturn state criminal administration must not be limited to this Court alone does not make it less desirable to give this Court an opportunity to perform its duty of passing upon charges of state violations of federal constitutional rights.   This Court has evolved a procedure which assures an examination into the substance of a prisoner's protest against unconstitutional detention without allowing destructive abuse of the precious guaranty of the Great Writ.   Congress has specifically approved it.   Though a refusal of certiorari have no effect upon a later application for federal habeas corpus, a petition for certiorari here ordinarily should be required.

The answer to petitioner's argument that he should not be required to seek review here from a state's refusal

---

[43] *Dorsey* v. *Gill*, 80 U. S. App. D. C. 9, 148 F. 2d 857.

to grant collateral relief before applying to other federal courts involves a proper distribution of power between state and federal courts. The sole issue is whether comity calls for review here before a lower federal court may be asked to intervene in state matters. We answer in the affirmative. Such a rule accords with our form of government. Since the states have the major responsibility for the maintenance of law and order within their borders, the dignity and importance of their role as guardians of the administration of criminal justice merits review of their acts by this Court before a prisoner, as a matter of routine, may seek release from state process in the district courts of the United States. It is this Court's conviction that orderly federal procedure under our dual system of government demands that the state's highest courts should ordinarily be subject to reversal only by this Court and that a state's system for the administration of justice should be condemned as constitutionally inadequate only by this Court. From this conviction springs the requirement of prior application to this Court to avoid unseemly interference by federal district courts with state criminal administration.

As the *Hawk* requirement, we think, has always been the rule, no change in procedure is necessary and the reiteration of the rule in this decision can, of course, result in no shifting of the burden of work among federal courts.[44] No person restrained by state process could heretofore have been certain of a hearing on the merits of his application to a federal district court unless he had sought review in this Court of the state's refusal to release him.[45] Further, the rule contributes toward expeditious administration, since it raises the constitutional issue in a federal forum immediately, without the necessity of a second trial

---

[44] See note 32, *supra.*
[45] *Wade* v. *Mayo*, 334 U. S. 672, 681.

court proceeding and the compilation of a second record. And while the rule has the merit of reasonable certainty, it does not err on the side of unreasonable rigidity. Flexibility is left to take care of the extraordinary situations that demand prompt action. Solicitous as we are that no man be unconstitutionally restrained and that prompt, certain and simple methods for redress be available, those ends for which modern habeas corpus has been evolved can best be achieved by requiring in ordinary cases the exhaustion of state remedies and review here.

The present case involves a refusal, on the merits, of state collateral relief from a conviction allegedly obtained in violation of the Constitution. No review was sought in this Court of the state's refusal. Instead, without alleging that review had been sought in this Court and without reliance upon any pleaded facts to excuse such failure, the petitioner filed his application for this habeas corpus in the District Court. Limiting its consideration of the application solely to the question as to whether this was an extraordinary instance that required disregard of accustomed procedure, the District Court found that this was not a case of peculiar urgency. We agree with the lower court's conclusion that it should go no further into consideration of the application. A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused.[46] The petitioner has the burden also of

---

[46] *In re Cuddy,* 131 U. S. 280; *Johnson* v. *Zerbst,* 304 U. S. 458, 468; *Walker* v. *Johnston,* 312 U. S. 275, 286; *Hawk* v. *Olson,* 326 U. S. 271, 279.

showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist. Nothing has been pleaded or proved to show that here exceptional circumstances exist to require prompt federal intervention. Oklahoma denied habeas corpus after obviously careful consideration.[47] If that denial violated federal constitutional rights, the remedy was here, not in the District Court, and the District Court properly refused to examine the merits.

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, with whom MR. JUSTICE CLARK joins, concurs in the judgment and opinion of the Court, except for any indication it may contain that, although the reasons for a denial of certiorari are not stated, they nevertheless may be inferred from the record. He believes that the nature of the proceeding is such that, when the reasons for a denial of certiorari are not stated, the denial should be disregarded in passing upon a subsequent application for relief, except to note that this source of possible relief has been exhausted.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE BLACK joins, dissenting.*

This case concerns the exercise by the District Courts of their *habeas corpus* jurisdiction on behalf of State prisoners when a petition for certiorari to review a State court's determination of a federal claim was not first brought in this Court. In the generality of instances the issue is whether denial of certiorari is a prerequisite to

---

[47] *Ex parte Darr,* 84 Okla. Cr. 352, 182 P. 2d 523.

*[MR. JUSTICE JACKSON also joined in this opinion. See *post*, p. 238.]

resort to the District Courts. The case thus raises serious questions affecting the relations between State and federal authorities as well as between this Court and the lower federal courts. My view in brief is that federal courts must withhold interference with State criminal justice until every opportunity available in the State courts for the vindication of a federal right has been exhausted. Whether the State remedies have been so exhausted often involves elusive questions of local law with which district judges are more familiar than we can be without the light the lower courts afford us. Therefore, the power of the District Courts to issue a writ of *habeas corpus* should not be barred simply because a petition for certiorari was not first made in this Court. To hold otherwise is to disregard the settled rule that denial of certiorari has no legal significance or, in the alternative, if denial of certiorari remains without bearing on the merits in *habeas corpus* as in other cases, to require the State prisoner to go through the motion of securing a denial is to command a gesture which is meaningless to him and burdensome to this Court. In any event, to leave the District Courts in the dark as to what a denial of certiorari means in *habeas corpus* cases is not consistent with the fair administration of justice.

1. The course of our decisions on the power of the lower federal courts to entertain an application for a writ of *habeas corpus* on behalf of State prisoners has not run smooth. There is a reason. This seemingly technical problem of jurisdiction concerns the relation of the United States and the courts of the United States to the States and the courts of the States. Under any circumstances this "is a very delicate matter that has occupied the thoughts of statesmen and judges for a hundred years . . . ." Memorandum of Mr. Justice Holmes, August 20, 1927, denying an application for stay pending a petition for certiorari. 5 The Sacco-Vanzetti Case 5516.

Prior to the Civil War, *habeas corpus* was available in the United States courts, barring limited exceptions, only for those in federal custody. The Act of February 5, 1867, extended the power of the United States courts to grant writs of *habeas corpus* to "all cases where any person may be restrained of his . . . liberty in violation of the constitution, or of any treaty or law of the United States . . . ." 14 Stat. 385. A conflict between State and federal authorities in relation to the administration of criminal justice touches that "very delicate matter" at its most sensitive point. The Act of 1867 opened wide the door to that conflict. It has become intensified during the last twenty years because of the increasing subjection of State convictions to federal judicial review through the expanded concept of due process. See, *e. g.*, *Powell* v. *Alabama,* 287 U. S. 45, and *Mooney* v. *Holohan,* 294 U. S. 103. It ought not to be too surprising, therefore, that the full implications of federal restrictions upon the free range of a State's criminal justice have taken time to unfold.

2. Decisions on matters of procedure within the Court's control ought not to be like shifting sand. Quick fluctuations in them should be avoided unless a rule of practice has proven itself mischievous in practice. The real question before us in this case is whether *Wade* v. *Mayo,* 334 U. S. 672, should be overruled. Whether this overruling is to be done forthrightly by two words saying the case "is overruled" or the overruling is euphemistically done by fifteen words hardly changes the fact. Respect for an explicit adjudication on a matter of procedure very recently rendered after the fullest consideration, as well as the soundness of the decision, should lead us to adhere to *Wade* v. *Mayo.*

3. The weight which attaches to a decision of this Court particularly on matters of practice is naturally enough affected by the circumstances attending it. Apart

from the intrinsic justification of *Wade* v. *Mayo* on grounds of policy, to which I shall shortly advert, that decision was a product of the deliberative process at its weightiest. On original submission in October, 1947, and full consideration by the Court, the case was restored to the docket in November, 1947, was resubmitted on March 9, 1948, received thorough reconsideration by the Court, and after long incubation was decided on June 14, 1948. The procedural issue which received this unusual attention was thus phrased in the Court's opinion:

> "whether it was proper for a federal district court to entertain a *habeas corpus* petition filed by a state prisoner who, having secured a ruling from the highest state court on his federal constitutional claim, had failed to seek a writ of certiorari in this Court." 334 U. S. at 674–75.

This is the way the issue was framed in the dissenting opinion:

> "The first question in this case is whether Wade's failure to bring a writ of certiorari to this Court from the judgment of the Florida Supreme Court in his state habeas corpus proceeding should affect his effort to obtain release through a federal writ of habeas corpus. Or, to rephrase the problem, should certiorari to this Court be considered a part of the state remedy for purposes of the well-recognized doctrine of exhaustion of state remedies?" 334 U. S. at 686.

The problem as rephrased in the dissent stated with precision the decisive inquiry. Relief from a federal court cannot come until corrective State process to vindicate the claimed federal right is unavailable. This has been so ever since *Ex parte Royall*, 117 U. S. 241. Therefore, if the "state remedies" which must be exhausted include an application for review of a State court's decision by our discretionary writ of certiorari, it would be pre-

mature for a District Court to entertain a petition for *habeas corpus* before such application. That question— whether a petition for certiorari is to be deemed part of the "state remedies"—had never been canvassed by this Court. The Court had made some uncritical assertions about it and in a moment I shall deal with them. But the problem had never been critically analyzed until the issue became determinative of the decision in *Wade* v. *Mayo*.

4. The answer which the dissent gave to the problem determined the dissent. It concluded "that certiorari should be considered a part of the state procedure for purposes of habeas corpus." 334 U. S. at 689. The Court's analysis of the problem led to the contrary result. While fully acknowledging the principle that State remedies must be exhausted before relief can be sought in a federal court, it rejected the notion that an application to this Court for review by certiorari can be deemed part of the State remedies.

5. Now the Court likewise rejects the basis of the dissent in *Wade* v. *Mayo*—that a petition for certiorari is to be deemed part of State remedies and as such must be exhausted. But it retains the conclusion which was drawn from the rejected premise. It does so in complete disregard of our repeated insistence regarding the significance of denial of petitions for certiorari, reflecting the narrow range of inquiry not going to the merits which alone is open on such petitions. Likewise disregarded are practical considerations relating to the administration of this Court's business, particularly the inherent difficulties of ascertaining in this Court in the first instance the available remedies under State procedure, which is a threshold question in determining whether State remedies have been exhausted.

6. Of course a State prisoner can come here and seek review, by way of certiorari, of a denial by the State court

of his alleged federal constitutional right. The Court may grant his petition and decide the issue against him. If the petition is granted and the State's view of his federal claim is sustained here, he may still sue out a writ in the District Court. The doctrine of *res judicata* is inapplicable. In the *Sacco-Vanzetti* case, application was first made to the Circuit Justice, then to the Senior Circuit Judge, and thereafter to the District Judge. See 5 The Sacco-Vanzetti Case 5532, 5533, 5534. To be sure, prior denials carry considerable weight in disposing of a later application, but merely by way of safeguard against "abusive use" of the writ while fully respecting "its recognized status as a privileged writ of freedom." *Salinger* v. *Loisel*, 265 U. S. 224, 232.

Our problem is not whether a petitioner may come here after exhausting his State remedies but whether he must come here and have his petition for certiorari denied as a condition to invoking a federal court's jurisdiction on *habeas corpus*. An answer to this question necessarily turns on the significance of a denial of certiorari. MR. JUSTICE REED's opinion makes a Delphic disposition of this issue, which will inevitably create confusion among federal judges. It surely does not make for clarity of doctrine nor does it promote the practical administration of justice to suggest that denial of certiorari may be given weight upon later application for *habeas corpus* in lower federal courts, but to refuse to be explicit. On the basis of this pronouncement, how are some 200 district judges to dispose of petitions for *habeas corpus* brought by State prisoners after denial of certiorari here? The opinion in effect invites them to take into consideration the prior denial here, but then threatens them with possible reversal for so doing.

The state of uncertainty in which the District Courts are left must lead to conflicting interpretations of our undisclosed meaning. Some judges will infer that denial

of certiorari bears on the exercise of *habeas corpus* jurisdiction. Others will feel they should adhere to this Court's old avowals concerning denial until they are told explicitly to the contrary. Most confusing of all, many judges, as is the way of judges, are unlikely to resolve the ambiguity decisively. Instead, they will take an equivocal position in denying a writ of *habeas corpus,* relying in part on the discretionary aspect of *habeas corpus* and in part on the fact that this Court denied certiorari. Such a disposition will either lead lawyers to be dubious about pressing an appeal, or, if the District Court's decision be appealed, such a blend of reasons in denying the writ is not likely to be overturned by a Court of Appeals, and it would be most natural for this Court not to grant certiorari to review such a case. The significance of a denial of certiorari given by the lower courts would not be presented in such an unentangled form as would commend itself according to normal criteria for a grant of certiorari. Adjudication by this Court of the specific issue will thus be greatly delayed. The result may well be that denial of certiorari would in practice attain a significance which the Court is unwilling to give it by candid adjudication.

It is, of course, one of our functions to resolve conflicts among the lower courts. But it is not our duty to stimulate such conflicts. Especially with regard to *habeas corpus* should we avoid such ambiguity. "The great writ of liberty" ought not to be treated as though we were playing a game. When a question affecting the *habeas corpus* jurisdiction of the District Courts is before us, it is our duty to guide the District Courts and not refuse to guide them. We cannot avoid an answer on the ground that the question is not before the Court. Opinions are required in our legal system in order that the reasoning which justifies a conclusion may be made manifest. The disclosure of the reasoning by which a

conclusion is reached cannot remotely be deemed dictum. A decision implies the process of reasoning which requires it. It is essential to be clear about what denial of certiorari means before determining whether a petition for certiorari is prerequisite to the exercise of *habeas corpus* jurisdiction by a District Court. Surely it is necessary to consider what a procedural requirement means before making it a requirement.

7. The significance of a denial of a petition for certiorari ought no longer to require discussion. This Court has said again and again and again that such a denial has no legal significance whatever bearing on the merits of the claim. The denial means that this Court has refused to take the case. It means nothing else. The State court's judgment is left undisturbed without any legal reinforcement whatever of the views which the State court expressed. Counsel at the bar have frequently been stopped for drawing comfort out of such a denial and the Court's opinions have indicated impatience with failure to recognize that the only thing that such a denial imports is that there were not four members of the Court who deemed it desirable, for their respective reasons, to review a decision of the lower court. Even before the Judiciary Act of 1925 so vastly extended this Court's certiorari jurisdiction, the Court said: "The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." *United States* v. *Carver,* 260 U. S. 482, 490. This note of impatience has been sounded repeatedly.

The wholly negative meaning of a denial of certiorari is not so merely because we have said it. We have said it because it must be so unless the whole conception of certiorari in relation to the business of this Court is to be radically transformed. Such a revolutionary change cannot justifiably be taken in relation to one large group

of cases without drastic revision of the Court's treatment of such cases, with far-reaching consequences to the business of the Court and its proper discharge.

Nothing is more basic to the functioning of this Court than an understanding that denial of certiorari is occasioned by a variety of reasons which precludes the implication that were the case here the merits would go against the petitioner. Petitions may have been denied because, even though serious constitutional questions were raised, it seemed to at least six members of the Court that the issue was either not ripe enough or too moribund for adjudication; that the question had better await the perspective of time or that time would soon bury the question or, for one reason or another, it was desirable to wait and see; or that the constitutional issue was entangled with nonconstitutional issues that raised doubt whether the constitutional issue could be effectively isolated; or for various other reasons not relating to the merits. Divergent and contradictory reasons often operate as to the same petition and lead to a common vote of denial. The want of explanations for denials of certiorari is in part due to the fact that a collective reason frequently could not be given. To suggest that a District Court can determine the significance to be attached to this Court's denial of certiorari by an examination of the record on certiorari here is to offer the District Courts darkness without Ariadne's thread. Particularly is this true in cases sought to be brought here from the State courts in which State and federal grounds are frequently entangled and an unambiguous federal question often does not emerge from the record.

To attach significance to a denial of a certiorari petition regarding the merits of the issues raised by the petition would be to transform a mechanism for keeping cases out of this Court into a means of bringing them in. It would

contradict all that led to the adoption of certiorari juris-
diction and would reject the whole course of the Court's
treatment of such petitions, both in practice and profes-
sion. For if denial does import an expression of opinion
upon the merits of the case, then we must deal with the
merits of the case. During the last four fiscal years the
District Courts throughout the country had annually from
500 to 600 *habeas corpus* cases brought by petitioners
under State custody. To overrule *Wade* v. *Mayo* and to
make it the duty of this Court to pass on the merits of any-
thing like the number of these cases which would have to
be brought here on petitions for certiorari from the State
courts would throw an almost impossible burden upon
the Court.[1]

8. We certainly ought not to condition the power of
the local District Court to entertain a petition for *habeas
corpus* on a prior denial of a petition for certiorari here
if such denial carries no other significance than does the
denial of certiorari in any other class of cases. Mean-
ingless multiplication of steps in the legal process can
hardly be deemed a virtue in judicial administration.
Nor would it be more respectful of the dignity of a State
court for the District Court to disagree with the State
court's view of federal law if such disagreement came
after this Court had denied certiorari rather than before.

It is suggested, however, that this Court should have
the first opportunity to consider whether a State court

---

[1] Judge Learned Hand has carried the requirement of eliciting
a denial of a petition for certiorari in *habeas corpus* cases to its
logical conclusion by giving such denial conclusive effect on the
merits. *Schechtman* v. *Foster*, 172 F. 2d 339, 342–43. That is the
logical conclusion of such a requirement—but it is the logic of
unreality. For it flies in the face of the actualities of a denial.
The considerations entering into such denials have necessitated the
hitherto settled principle that denial carries no suggestion of adjudi-
cation on the merits.

was right in having denied a constitutional claim—what has been colloquially called a "first-crack" policy. The most weighty considerations of practical administration counsel against it. The burden of the Court's volume of business will be greatly increased, not merely because a greater number of certiorari petitions would be filed, but by reason of the effective pressure toward granting petitions more freely. For if the "first-crack" policy has any validity, it would require that every doubt be resolved in favor of granting certiorari, rather than leaving the case to the District Courts.

Moreover, State court decisions involving denial of federal claims made in collateral attack on a conviction are frequently decisions based merely on allegations in the pleadings. This Court can dispose of them only as a matter of abstract pleading. The District Courts, on the other hand, can hold hearings when deemed appropriate, consider allegations on their merits if they are at all substantial and dispose of what often turn out to be unmeritorious claims. Thus, the impact upon federal-State relationships of reversals of State court decisions, which this Court may not be able to avoid when it is limited to the pleadings, may well be avoided by lower federal courts, looking beyond paper allegations to the merits.

9. There is still another reason why it makes against, not for, sound administration of justice to bar exercise by a District Court of its *habeas corpus* jurisdiction merely because the discretionary power of this Court to review a State court decision has not been invoked. It is that cases involving federal claims by State prisoners so frequently involve questions of State law which must be answered before the federal issue can be reached. State questions are of two kinds: (1) Did the adverse State ruling exhaust the prisoner's available State rem-

edies? (2) May the State court's judgment be deemed to rest on some State ground?

Nothing stands out more prominently in the Court's experience with these cases than the doubts and difficulties in ascertaining the law controlling local practice and local remedies. Thus, according to the procedure of one State a constitutional issue like that in *Mooney* v. *Holohan, supra,* must be raised by *habeas corpus,* not *coram nobis,* while in another State only *coram nobis* is available, not *habeas corpus.* Although a State court may have felt that it wrote clearly, we may not be able to read clearly or at least in unison; some members of the Court read one way, some another. See, *e. g., New York ex rel. Whitman* v. *Wilson,* 318 U. S. 688; *Morhous* v. *Supreme Court of New York,* 293 N. Y. 131, 56 N. E. 2d 79; *People* v. *Sadness,* 300 N. Y. 69, 89 N. E. 2d 188.

The difficulties in determining exhaustion of State remedies are illustrated by a litigation another stage of which was reached by denial of certiorari last Monday. *Hawk* v. *Nebraska,* 339 U. S. 923. At an earlier date, the Supreme Court of Nebraska had affirmed a denial of *habeas corpus* by the lower State court. *Hawk* v. *Olson,* 145 Neb. 306, 16 N. W. 2d 181. This Court granted certiorari and reversed on the merits, acting on the assumption that a federal right had been disregarded, 326 U. S. 271, despite our earlier statement in *Ex parte Hawk,* 321 U. S. 114, 116, to the effect that State remedies could not be deemed exhausted in Nebraska until *coram nobis* had been attempted. On the remand, the Nebraska Supreme Court advised us that we had misconceived its opinion and misunderstood local procedure—that it had not denied a federal claim out of hand but decided only that *habeas corpus* was not the proper procedural road to take in Nebraska. 146 Neb. 875, 22 N. W. 2d 136. Hawk then applied for a writ of *habeas corpus* in the federal District Court for Ne-

braska, but was told that he must first try *coram nobis* in the State courts. 66 F. Supp. 195, affirmed *sub nom. Hawk v. Jones,* 160 F. 2d 807. The district judge showed his knowledge of his local law, for when the federal claim was asserted by *coram nobis* it was heard on the merits, decided by a Nebraska trial court against the petitioner and affirmed by the Nebraska Supreme Court, *Hawk v. State,* 151 Neb. 717, 39 N. W. 2d 561.

The *Hawk* litigation illustrates the importance of the doctrine of exhaustion of State remedies. That doctrine is vital to the harmonious functioning of two judicial systems where one is subordinate to the other. But the litigation also shows that waste and friction are bound to be promoted if review of State court decisions in this field will have to come here initially. We are dealing with elusive and treacherous local legal materials which in their nature are not within the special competence of this Court. Such materials look one way if one examines only the dead letter of print. But to one brought up within the local system they carry meaning which never can be got from books. See *Diaz v. Gonzalez,* 261 U. S. 102, 106. The sure-footed manner in which the federal district judge dealt with Nebraska procedure in *Hawk v. Olson, supra,* indicates that he would not have made the error into which this Court fell. The Nebraska situation is representative of the difficulties and doubts that this Court has encountered again and again in regard to the local remedies available. The matter comes peculiarly within the rule of wisdom, often applied by this Court, whereby questions of local law and local practices will not be decided here but will be submitted to the knowledgeable views of federal judges in the various localities. See *Gardner v. New Jersey,* 329 U. S. 565, 583, and cases cited. This rule respects all the considerations that preclude intervention by a federal court until the State courts have fully acted.

*Burke* v. *Georgia,* 338 U. S. 941, is another admirable illustration of why we should not require cases raising a dubious constitutional question as to the validity of State convictions to be brought here before *habeas corpus* is sought in the District Courts. That we denied certiorari "without prejudice" to future proceedings in the District Court carried no legal significance.[2] The case merely demonstrates how frequently in this situation preliminary questions of State procedure and State court jurisdiction are involved. Instead of allowing these local issues to be canvassed initially in the District Courts, it is now proposed to deal with cases like *Burke* v. *Georgia* by requiring that they be brought here enveloped in the fog of State procedural law and then leaving it to the District Courts to lift the fog after we have concluded that it is too thick for us to pierce. Such procedure, I submit, would neither further the administration of justice nor be conducive to the proper use of this Court's time for the effective conduct of its inescapable business nor advance the self-esteem of State courts.

10. Nor need we be concerned lest the federal District Courts will lightly inject themselves into the State criminal process and open wide the State prison doors. Experience completely dispels such excogitated fears. The District Courts are presided over by judges who are citizens of the State, with loyalties to it no less strong than those of the judges of the State courts. Judges often come to the federal courts from the State courts. The proof of the pudding is in the eating. The showing is overwhelming that the District Courts grant writs of *habeas corpus* most sparingly and only with due re-

---

[2] The considerations that lead to an explicit statement that denial of certiorari is "without prejudice" to other avenues of relief because it does not bear on the merits of course carry no negative implication that in the absence of such a phrase the denial is with prejudice.

gard for this Court's decisions under the Due Process Clause.[3]

Even though a petition for *habeas corpus* in a federal District Court may involve constitutional questions which were found against the petitioner by the highest court of his State, the District Court is not sitting as a court of review of the State court. A petition for *habeas corpus* in a federal court, after the State process has been exhausted, "comes in from the outside," as Mr. Justice Holmes phrased it in his dissenting opinion in *Frank* v. *Mangum*, 237 U. S. 309, 345, 346, a view which established itself as law in *Moore* v. *Dempsey*, 261 U. S. 86. If it be suggested that as a matter of appearance, legal analysis apart, a federal District Court might be granting relief which the highest court of the State had denied, the same unanalyzed appearance would attach to a District Court's granting relief after this Court had denied it.

11. Due regard for State and federal relations as expressed in the doctrine of exhaustion of State remedies and adherence to the function played by certiorari in the business of this Court combine to reject as erroneous the notion that federal District Courts are to be barred from exercising their *habeas corpus* jurisdiction if certiorari was

---

[3] The Administrative Office of the United States Courts has compiled the following statistics:

| Fiscal Years | 1945–46 | 1946–47 | 1947–48 | 1948–49 |
|---|---|---|---|---|
| Habeas corpus cases involving State prisoners disposed of by District Courts | 503 | 481 | 487 | 610 |
| Cases in which petitioners were successful | 14 | 13 | 11 | 10 |
| Percentage of cases in which petitioners were successful | 2.8% | 2.7% | 2.3% | 1.6% |

See Speck, *Statistics on Federal Habeas Corpus*, 10 Ohio State L. J. 337, 357 (1949).

not first sought here. The error derives from the assumption that a petition for certiorari to this Court was included in the "State remedies available" which must be exhausted before a federal court can entertain a writ of *habeas corpus*. This assumption appears for the first time in a *per curiam* opinion in *Ex parte Hawk,* 321 U. S. 114, 117. It was repeated, though not in issue, in the *per curiam* in *White* v. *Ragen,* 324 U. S. 760, 764. A consideration of what actually was said in *Ex parte Hawk* on this matter makes it perfectly clear how the misconception about certiorari in relation to the District Court's jurisdiction in *habeas corpus* crept into *Ex parte Hawk*. The following is everything contained in *Ex parte Hawk* on the subject:

> "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted. *Tinsley* v. *Anderson,* 171 U. S. 101, 104–5; *Urquhart* v. *Brown,* 205 U. S. 179; *United States ex rel. Kennedy* v. *Tyler,* 269 U. S. 13; *Mooney* v. *Holohan, supra,* 115; *Ex parte Abernathy,* 320 U. S. 219." 321 U. S. at 116–17.

The essence of this statement is the doctrine of exhaustion of State remedies. Two of the citations—*Mooney* v. *Holohan* and *Ex parte Abernathy*—have only that relevance. The three other citations—*Tinsley* v. *Anderson; Urquhart* v. *Brown; United States ex rel. Kennedy* v. *Tyler*—are directed to the particularization in the main statement as to the exhaustion of "all state remedies available, including all appellate remedies . . . in this Court . . . ." These three cases illustrate a series of decisions in this Court holding that a lower federal court

ordinarily ought not to exercise its jurisdiction in *habeas corpus* in favor of one in State custody even after a final determination by the highest court of a State unless he has availed himself of his remedy "to review it by writ of error from this court." *Tinsley* v. *Anderson,* 171 U. S. 101, 105.

Of course. A writ of error was a writ of right. It makes all the difference in the world whether a prisoner knocks at the door of this Court to invoke its grace or has unquestioned access for the final determination of the federal question as to which the highest court of the State was merely an intermediate tribunal. The latter was the situation in the three cases cited in *Ex parte Hawk.* In the writ of error cases this Court held *habeas corpus* in the lower federal courts ought not to take the place of a mandatory appeal. *Markuson* v. *Boucher,* 175 U. S. 184.

But this jurisdictional situation was drastically changed by the Act of September 6, 1916, 39 Stat. 726, and the Act of February 13, 1925, 43 Stat. 936. The whole purport of this transforming jurisdictional legislation was to bar the door of this Court to litigation like this flood of *habeas corpus* cases. After this shift from review as of right to review by grace, it could no longer be said that a litigant forwent his right to have this Court review and reverse a State court. The right was gone. Only an opportunity—and a slim one—remained. It completely misconceives the doctrine which required a case to be brought to this Court by writ of error, because it was the duty of this Court to adjudicate the claim on the merits, to apply it to the totally different factors involved in certiorari. All the considerations of policy required that the process of constitutional adjudication through writ of error be exhausted before a lower federal court could step in. Until *Ex parte Hawk* there was no sug-gestion of assimilating certiorari to the writ of error

doctrine. In the present context of the Court's business in relation to these cases—their volume and the required knowledge of local law with which the local federal judges are much more familiar than we can possibly be—all considerations of policy urge against requiring certiorari to be filed and denied before the District Court may be allowed to exercise jurisdiction.

The reasons underlying *stare decisis* are not applicable to such a procedural suggestion as *Ex parte Hawk* made regarding the requirement of petitioning this Court for certiorari before evoking the District Court's jurisdiction on *habeas corpus.* That suggestion never was translated into practice so far as the records of this Court disclose. What was specifically decided in *Ex parte Hawk* did become the practice of this Court—that is, petitions for leave to file a writ of *habeas corpus* in this Court under § 262 of the Judicial Code, now 28 U. S. C. § 1651, were thereafter denied. But no instance has been revealed in which this Court acted on the suggestion that exhaustion of State remedies includes denial of certiorari here. Apart from the fact that *Wade* v. *Mayo* displaced the inclusion of certiorari as part of the State remedies, it was recognized at the last term of Court that the scope of *Ex parte Hawk* was that it expressed the "doctrine of exhaustion of state remedies." *Young* v. *Ragen,* 337 U. S. 235, 238.

12. A final point remains and that is the suggestion that the provision of the 1948 revision of the Judicial Code requires adherence to what was said in *Ex parte Hawk* about resort to certiorari. The Code provisions say no such thing nor do the Reviser's notes. Section 2254 of Title 28 merely formulates the judicial doctrine first announced by this Court in *Ex parte Royall,* 117 U. S. 241—the doctrine of exhaustion of State remedies:

> "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears

that the applicant has exhausted the remedies available in the courts of the State . . . .

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

*Wade* v. *Mayo* made it clear that certiorari is not a remedy "available in the courts of the State" and no claim is now made to the contrary. With that abandonment goes the uncritical inclusion by *Ex parte Hawk* of certiorari among the remedies of the State. *Wade* v. *Mayo,* to be sure, could not have been before the Congress, but the Reviser characterized § 2254 as "declaratory of existing law as affirmed by the Supreme Court," adding "See Ex parte Hawk." That decision is sound enough in its essential requirement for "exhaustion of State remedies." The slip in analysis it contained as to what are "State remedies" is surely not the equivalent of an enactment by Congress. A far more persuasive case for finding reenactment by Congress of a decision of this Court was rejected in *Girouard* v. *United States,* 328 U. S. 61.

13. In short, the decision reached today has alternative consequences neither of which, I respectfully submit, can be justified. In barring a District Court from entertaining a petition for *habeas corpus* on behalf of a State prisoner prior to denial of certiorari here, the decision must mean either (1) that denial of a petition for certiorari in this class of cases, unlike denials in all other classes of cases, would serve the purpose of an adjudication on the merits, thereby carrying with it all the weight that an adjudication on the merits by this Court should carry with a District Court even in *habeas corpus* cases, or (2) that such a denial, as is true of denials in any other type of case, has no legal significance.

The first alternative—that in *habeas corpus* cases denial of certiorari has the effect of a disposition on the merits—would require a complete change in our consideration of such petitions by this Court. They would have to be treated as we now treat cases in which a petition for certiorari is granted so as to be heard on the merits. This would cast a new burden upon the Court full of the direst consequences to the proper disposition of the rest of the business of the Court. In addition, if denial of certiorari as though on the merits but without full dress consideration would, for all effective purposes, preclude resort to the District Courts on a claim that State custody is in violation of the Constitution, it would judicially nullify the *habeas corpus* jurisdiction which was first given to the lower federal courts by the Act of February 5, 1867, and has ever since been retained. On the second alternative, *i. e.,* that denial of certiorari in *habeas corpus* cases is like any other denial of certiorari, the Court would announce that a meaningless step in this Court is an indispensable preliminary to going to the local District Court.

I agree with the opinion of Judge Phillips below that the case should be reversed and remanded to the District Court.

MR. JUSTICE JACKSON, being of the opinion that this is the better of the two unsatisfactory courses open to us, joins this opinion.