**Henry C. SIMPSON, Petitioner,**

v.

**Harley O. TEETS, Warden, California State Prison, San Quentin, California, Respondent.**

No. 34458.

United States District Court
N. D. California, S. D.

July 22, 1957.

Appeal Dismissed Oct. 3, 1957.
See 248 F.2d 465.

James F. Thacher, San Francisco, Cal., for petitioner.

Edmund G. Brown, Atty. Gen., State of California, Clarence A. Linn, Asst. Atty. Gen., and Arlo E. Smith, Deputy Atty. Gen., San Francisco, Cal., for respondent.

ROCHE, Chief Judge.

Petitioner, Henry Simpson, was convicted of counseling, advising, and encouraging his 13 year old son to kill Simpson's wife. After trial by jury a verdict of guilty of murder in the first degree was returned, without recommendation, and a sentence of death imposed.

The California Supreme Court, on the mandatory appeal unanimously affirmed the judgment. People v. Simpson, 43 Cal.2d 553, 275 P.2d 31. Thereafter petitioner was scheduled to die in the gas chamber on February 25, 1955.

Petitioner filed a petition for a writ of habeas corpus and stay of execution with the California Supreme Court. An order from that court denied the petition without opinion. Thereafter, on February 24th, the day before the scheduled execution, petitioner filed a second petition for a writ of habeas corpus and stay of execution with the California Supreme Court. Petitioner's counsel filed a duplicate copy of this petition in the United States District Court. The record discloses that hearings were held in this court February 24th the day before petitioner was to be executed.

Counsel for petitioner took the position at these hearings that with the California Supreme Court's denial of petitioner's petition for a stay of execution and writ of habeas corpus on February 23rd that petitioner had exhausted his state remedies in the state court. Counsel for petitioner contended, therefore, that the petition then before this court should be granted.

Since petitioner's counsel had filed a petition with the California Supreme Court on that day, February 24th, this court would not grant petitioner the relief prayed for until the petition before the state court had been acted upon. Therefore, at the court's direction, petitioner's counsel secured a copy of the order of the state court's denial of petitioner's second petition for a writ of habeas corpus and stay of execution. Whereupon this court issued an order granting petitioner a stay of execution for a period of ten days, thus enabling counsel to petition the United States Supreme Court for a writ of certiorari.

Petitioner filed a petition for a writ of certiorari in the United States Supreme Court, and that Court denied his petition. 349 U.S. 960, 75 S.Ct. 890, 99 L. Ed. 1283. Whereupon the United States District Court denied petitioner's petition for a writ of habeas corpus and vacated its previous order staying his execution. An appeal was taken and the denial of the petition was affirmed by the United States Court of Appeals for the Ninth Circuit in an opinion reported as Simpson v. Teets, 239 F.2d 890, one judge dissenting. Thereafter a petition for writ of certiorari was filed in the United States Supreme Court. The United States Supreme Court granted petitioner a writ of certiorari, vacated the judgment of the Court of Appeals and remanded the case to this court. 353 U.S. 926, 77 S.Ct. 720, 1 L.Ed. 722. The mandate reads as follows:

"On writ of Certiorari to the United States Court of Appeals for the Ninth Circuit.

"This cause came on to be heard on the transcript of the record from the United States Court of Appeals for the Ninth Circuit, and was duly submitted.

"On consideration whereof, It is ordered and adjudged by this Court that the judgment of the said United States Court of Appeals, in this cause, be, and the same is hereby, vacated; and that this cause be, and the same is hereby, remanded to the United States District Court for the Northern District of California with directions to grant a hearing on the allegations of the petition for writ of habeas corpus unless the court finds that petitioner's state remedies have not been exhausted."

The court then issued an order to show cause directing Harley O. Teets, Warden, California State Prison at San Quentin to have petitioner, Henry Simpson, returnable before this court, and that a hearing be had on the allegations of said petition for writ of habeas corpus on July 2, 1957.

1. Exhaustion of State Remedies

■ Respondent contended that petitions of petitioner heretofore presented to the California Supreme Court did not comply with that court's procedural requirements, and that *until* petitioner had presented to that court a petition conforming to state procedural requirements he could not exhaust his state remedies. In support of these contentions respondent cites the cases of In re Swain, 34 Cal.2d 300, 209 P.2d 793; In re Razutis, 35 Cal.2d 532, 219 P.2d 15; People v. Bronaugh, 100 Cal.App.2d 220, 223 P.2d 256; Buchanan v. O'Brien, 1 Cir., 1950, 181 F.2d 601; Willis v. Utecht, 8 Cir., 1950, 185 F.2d 210; and United States ex rel. Calvin v. Claudy, D.C., 95 F.Supp. 732.

The petition now before this court, however, was before the Court of Appeals for the Ninth Circuit in Simpson v. Teets, supra, and at page 892 of 239 F.2d Judge Pope stated: "The petition was inartificially drawn in Simpson's own handwriting, but the essential alle-

gations are there when it is construed in accordance with the rule of Thomas v. Teets, 9 Cir., 205 F.2d 236, 238, and the cases there cited."

Also, the language of Mr. Justice Reed in Darr v. Burford, 339 U.S. 200, at page 203, 70 S.Ct. 587, at page 590, 94 L.Ed. 761 should be borne in mind, when a federal court considers a petition for a writ of habeas corpus.

> "The writ of habeas corpus commands general recognition as the essential remedy to safeguard a citizen against imprisonment by State or Nation in violation of his constitutional rights. To make this protection effective for unlettered prisoners without friends or funds federal courts have long disregarded legalistic requirements in examining applications for the writ and judged the papers by the simple statutory test of whether facts are alleged that entitle the applicant to relief."

Counsel for petitioner contends that petitioner's state remedies have been exhausted; that petitioner's two applications to the California Supreme Court for writs of habeas corpus, which were denied, and his first application to the United States Supreme Court for a writ of certiorari, which was also denied, effectively exhausted his state remedies, and he cites the case of Thomas v. Teets, supra, and the cases cited therein, as authority for support of this contention.

In the Thomas case the Court of Appeals for the Ninth Circuit held that petitioner had exhausted his state remedies *even* though he did not petition for certiorari until after he filed his application in the District Court. At page 240 of 205 F.2d, the court said:

> "Thomas did not seek certiorari on this denial of the writ before he filed his application in the district court below. We do not agree with the Warden's contention that this deprives the district court of jurisdiction to consider it. This is not the 'ordinary' case of Darr v. Burford, 339 U.S. 200, 207, 70 S.Ct. 587, 94 L.Ed. 761 and Ex parte Hawk,

321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572. Here there exist the special circumstances of Darr v. Burford and 28 U.S.C. § 2254, rendering the 'process [of certiorari] ineffective to protect the rights of the prisoner.' "

Again, in the Thomas case at page 242 of 205 F.2d, the Court of Appeals for the Ninth Circuit, construing the meaning of 28 U.S.C. § 2254, and speaking of the jurisdiction of federal district courts in habeas corpus proceedings, said:

> "In reaching the conclusion that Congress in enacting 28 U.S.C. § 2254 gives a federal district court the power to entertain applications for the writ alleging the violation of constitutional rights in ordinary cases without special circumstances, the opinion disposes of the contention that it acts as an inferior court as against a superior court in determining the validity of a decision of a state supreme court.

> "In that regard it states 'Insofar as this jurisdiction enables federal district courts to entertain claims that State Supreme Courts have denied rights guaranteed by the United States Constitution, it is not a case of a lower court sitting in judgment on a higher court. It is merely one aspect of respecting the Supremacy Clause of the Constitution whereby federal law is higher than State law. It is for the Congress to designate the member in the hierarchy of the federal judiciary to express the higher law. The fact that Congress has authorized district courts to be the organ of this higher law rather than a Court of Appeals, or exclusively this Court, does not mean that it allows a lower court to overrule a higher court. It merely expresses the choice of Congress how the superior authority of federal law should be asserted.' " Daniels v. Allen, 344 U.S. 443, at page 510, 73 S.Ct. 397, at page 448, 97 L.Ed. 469.

896

Having carefully considered the oral and written arguments of counsel for petitioner and counsel for respondent, and the cases cited to sustain their respective positions, the court concludes, and finds as a matter of law that petitioner has effectively exhausted his state remedies.

### 2. Hearing on Petition for Writ of Habeas Corpus

■ Petitioner alleged in his petition for writ of habeas corpus that the district attorney, Frank Pierson, knowingly used false testimony to convict petitioner, and that he coerced petitioner's stepson, Donald Dodge, into giving false testimony.

The record of this hearing will indicate that the court did not restrict the testimony or evidence to these two narrow issues, but afforded petitioner the widest possible latitude to prove that the allegations contained in his petition were true. The court gave petitioner's counsel permission to subpoena for appearance at the hearing any witnesses petitioner wished to call.

### Testimony of Clarence Simpson

Petitioner's son, Clarence Simpson, was called as a witness at the hearing on behalf of petitioner. Answering questions propounded by petitioner through his counsel he testified that he had heard his father threaten to kill his mother, and that the plan to kill her began about a month and a half before the murder. He also testified that his father originated the plan, and that his father told him to kill his mother the night before the murder took place.

He testified, further, that he gave his testimony of his own free will and that he had not been threatened or offered inducements to testify.

### Testimony of William Simpson

Petitioner's son William Simpson, was also called to testify on behalf of petitioner. He testified that he had heard petitioner threaten to kill his mother, but that he (William) had not been a part of the plan to kill her. He also testified that he had not been threatened or offered inducements to testify at the hearing.

### Testimony of Henry Simpson

Petitioner testified in his own behalf at the hearing, stating that he had been prosecuted by false witnesses and false statements, that the transcript of his trial contained testimony of persons who never appeared in court, and that testimony which was never presented in court was included in the transcript on appeal. He also testified that Frank Pierson, the district attorney took petitioner's stepson, Donald Dodge, by the arm and threatened to prosecute him unless he testified as the district attorney instructed.

Petitioner likewise testified that the transcript of the trial proceedings furnished to the California Supreme Court is false in certain respects; that at the trial Donald Dodge was not cross-examined with the exception of two short questions. He testified that the testimony of Bill Christian and Mary Christian was inaccurate, that they did not testify at the trial that he had threatened his wife.

He also testified that three statements taken by the court reporter, A. M. McNeil, were not read in court, although they appear in the transcript.

The petitioner also testified, generally, that the prosecution intimidated witnesses, and as a result he was convicted by perjured testimony.

### Testimony of A. M. McNeil

The court reporter, A. M. McNeil, called as an adverse witness by petitioner, testified at the hearing. He brought his original trial notes to the stand and at direction of petitioner's counsel read the testimony of several witnesses. Counsel for petitioner and counsel for respondent compared McNeil's reading of his notes with the transcript then in evidence and found it to be true and accurate.

McNeil stated that he had examined the transcripts of the entire proceedings of petitioner's trial, after they had been typed, and that he certified that the

transcripts, now in evidence, were true and correct. He also testified that he had taken down pre-trial statements made by petitioner, Henry Simpson, and his two sons, Clarence and Billy Simpson in March of 1953; that at direction of the various counsel he had read into the record at the trial certain pages and certain lines from those statements.

### Testimony of Frank Pierson

Similarly, the district attorney, Frank Pierson, testified that he was present during the trial, heard all of the testimony taken, that a daily transcript was furnished, and that he read the final transcript as prepared for the California Supreme Court which is now in evidence. He stated that at no time during the trial, except as to minor matters, did the defense object to matters in the transcript. He testified that it was his recollection that at the time he read the daily transcripts and the transcripts were prepared for the California Supreme Court, that they were accurate and that the portion of the transcript covering the cross-examination of Donald Dodge was accurate.

He testified that at the completion of the direct testimony of Donald Dodge he did have a conversation with Dodge as he stepped from the stand at a recess in the court's session. He testified that he told Dodge not to fear petitioner Simpson and to relax on the stand, and to tell his story.

He also testified that the transcript of the testimony of Bill and Mary Christian was correct, and that the court reporter, A. M. McNeil, at the direction of counsel, read the statements of Henry Simpson, Clarence Simpson, and Billy Simpson into the record at the trial.

### Testimony of Dwayne Lilly

Dwayne Lilly was courtroom clerk for the Superior Court during a portion of Simpson's murder trial. Lilly testified that he had prepared the transcript furnished to the California Supreme Court and that it accurately reflected the minutes kept by him.

### Testimony of Donald Dodge

The stepson, Donald Dodge testified that at no time did the district attorney make any threats or promises of any kind concerning his testimony. He further stated that his testimony concerning prior threats by petitioner against the deceased were true and accurate and that he had gone voluntarily to the office of the district attorney and offered information.

Finally, petitioner testified that he had propounded certain questions that, through his counsel, had been asked of the various witnesses throughout the hearing, and he testified that he had no further questions to be asked of them.

### Findings of Fact

**1**

Petitioner is lawfully confined by respondent pursuant to commitments and warrants of execution from the Superior Court of the State of California, in and for the County of Stanislaus.

**2**

It is not true that District Attorney, Frank Pierson, used false testimony in the prosecution of petitioner, and he did not knowingly use false testimony in the prosecution of petitioner.

**3**

It is not true that Frank Pierson, District Attorney, took petitioner's stepson, Donald Dodge, by the arm and threatened that he must testify as the district attorney told him to testify or he would be prosecuted.

**4**

It is not true that witnesses Mary and Bill Christian testified falsely at petitioner's trial in the state court.

**5**

It is not true that witnesses at petitioner's trial in the state court were threatened or intimidated by persons connected with the prosecution, and it is not true that petitioner was convicted by perjured testimony.

**6**

It is not true that the transcript of the criminal trial of petitioner includes testimony which was not received at petitioner's trial.

**7**

It is not true that the transcript of the trial of petitioner in the state court

contains testimony of persons who never appeared in court.

### 8

It is not true that the pre-trial statements of Henry Simpson, Clarence Simpson, and Billy Simpson were not read into the record at the trial by A. M. McNeil, the court reporter.

### 9

It is not true that the transcript of the trial proceedings furnished the California Supreme Court was false in certain respects.

### Conclusion of Law

Petitioner has failed to sustain the allegations of his petition and the writ should be discharged.

### Judgment

It is Ordered, Adjudged and Decreed that petitioner, Henry Simpson, has exhausted his state remedies; and

It is Ordered, Adjudged and Decreed that the writ of habeas corpus heretofore issued herein be and the same is hereby discharged, and the petitioner is remanded to the custody of the respondent.