**Mary June SPEIGHT, Petitioner,**

v.

**Lamar WHIDDON, Sheriff, Turner County, Georgia, Respondent.**

Civ. No. 80–93–ALB.

United States District Court, M. D. Georgia, Albany Division.

Nov. 7, 1980.

J. M. Raffauf, Atlanta, Ga., for petitioner.

Curtis M. French, Tifton, Ga., for respondent.

## ORDER

OWENS, District Judge.

The petitioner, unable in the state courts to secure an order setting an appeal bond pending disposition of her state appellate remedies, moves the court to grant her bail. Petitioner is presently incarcerated in the Turner County jail and has served approximately two months of her three year sentence for possession of more than one ounce of marijuana in violation of Ga.Code Ann. § 79A–811(j).

Following petitioner's conviction and sentencing on September 10, 1980, the trial court denied petitioner's request for an appeal bond to be set on September 12, 1980. A timely notice of appeal was filed on September 22, 1980. On September 25, 1980, the Georgia Court of Appeals reversed the trial court's denial of bond. Pursuant to the order of the Court of Appeals, the trial court on October 9, 1980, entered new find-

ings of fact and conclusions of law denying petitioner's request for an appeal bond to be set. The Georgia Court of Appeals affirmed the trial court on October 15, 1980. The Supreme Court of Georgia denied certiorari on the bond issue on October 28, 1980. All possible state remedies as to the issue of bail pending appeal have, therefore, been exhausted.

Petitioner's statement of facts in support of her motion is as follows:

"Petitioner's car was involved in an eight car wreck in Monroe County, Georgia on the evening of October 11, 1979. Petitioner's 1977 Mercury was hit in the rear. The damage to the car made the car undriveable. A truck hit the rear quarter panel, buckling and pushing up the trunk lid but not springing it. There was a hole in the passenger side of approximately 8 × 12 inches. Petitioner hired a wrecker service to tow her car to Ashburn, Turner County, Georgia, where her sister lived. The Monroe County Police and Georgia State Patrol came to the scene of the accident but did not arrest Petitioner for any crime or apparently suspect anything.

At approximately 9:30 p. m. on October 11, 1979, the Sheriff of Turner County said he received an anonymous phone call that a car involved in the Monroe County wreck was going to be towed 'through Ashburn'. The Sheriff testified the caller said that:

There would be a 1977 silver gray Mercury being towed back through this county with a rear end collision and it would be *loaded with junk*. (emphasis added).

The Sheriff said that he understood 'junk' to mean 'some kind of drug.'

As to the identity of the caller, the Sheriff said: 'I didn't tell them who I was and I didn't ask who I was talking to.' As to the reliability of the anonymous tip, the Sheriff said:

I didn't think too much of it at first. When I called Monroe County, and they had an eight-car pileup, then it created some suspicion, yes.

Nevertheless, the Sheriff went for the express purpose to investigate. The Sheriff parked at Highway 159 and I–75 until 11:30 p. m., when he finally spotted the car in tow. The Sheriff said that from his seat in the patrol car he could see inside the trunk and could see therein 'three plastic bags torn with sprigs of green leafy substance sticking out.' The Sheriff said he could see the substance from inside his car, even though the car was being towed from the rear. The Sheriff said it 'resembled marijuana'. The Sheriff viewed the car as it was pulled over at a service station near the exit where Petitioner was making a telephone call. At that time, the Sheriff asked her if she was lost, and Petitioner replied 'No.' Even though he said he saw marijuana, he did not arrest or question Petitioner further because:

There were two people besides the wrecker driver, and I was by myself, and I didn't want to take the chance of either one getting away. They had already stated they were going into town. So, I decided to wait until I got into town and get some help from the City.'

The Sheriff let the tow truck proceed to Ashburn, where he stopped it. As the Sheriff apprehended the car, he pulled a sprig out of one of the bags, smelled it and then 'suspected it being marijuana'. The Sheriff said he didn't have to reach inside the trunk because the bags were bulging out of the trunk. The Sheriff said the sprigs sticking out were very easy to see and 'real obvious'. The car was then towed to the jail, where it was searched further and seven bags of marijuana were found in the trunk.

The Sheriff testified that there was no warrant or consent to search. As for the bags the marijuana was in, the Sheriff said, 'You couldn't see through them, only they were torn.'

In rebuttal, the defense called the tow truck driver. The tow truck driver testified that at no time had he ever seen or smelled marijuana in the car. He said he

looked at the rear of the vehicle and even hooked up the tow bar to the rear of the car. The wrecker driver said the hole in the trunk was 3 inches wide, but that a hole in the passenger side of the car was 10–15 inches wide. He said he saw an overnight bag through the hole. He emphasized he never saw or suspected any marijuana: 'I wouldn't have been pulling it if I had.' When the police stopped his truck in Ashburn, the wrecker driver said that one of the officers said: 'I knew it was in there, because I could smell it from way back here.' The officers had a flashlight and they pulled a bag out of the hole. The driver still did not see any marijuana until 'they pulled out a green trash bag sitting in the—right there, and pulled the top open on it.' The Petitioner was then placed under arrest. A full search was not conducted until the car was towed to the jail where the locked trunk was opened for the first time.

After the testimony from the wrecker driver, the prosecutor asked for a recess: 'In view of the testimony that's come out, I would like to see about possibly getting some rebuttal witnesses.' The Sheriff then tried to buttress his own testimony concerning his contention that the marijuana was highly visible, with sprigs bulging from the trunk. The Sheriff said:

'I asked her how in the hell she got through an eight-car pileup with that stuff showing like it did and an officer walking around writing the report. She told me that she would throw her jacket over the hold [sic] when he would walk up to the car. I said, "What about when he would go to the other side?" She said, "I would walk around there and throw it over the other side."

The prosecutor also called Officer Larry Barfield as a rebuttal witness. Barfield testified that he pulled the tow truck and car over and that he and the Sheriff walked up to the rear of the car together. Barfield said at that time he did not see any marijuana—even though he had his nose 'right down on it'. Barfield said that marijuana was not found until the car was towed to the jail and searched. He said that neither did the Sheriff say anything about seeing marijuana. Barfield said he was familiar with marijuana, having seen it a 'thousand times'. Barfield said the marijuana was 'discovered' because when they stopped the car they investigated and smelled marijuana.

'We walked to the back of the wrecker and looked around the car and smelled a strong odor back there. The trunk was bowed open where it had been hit and I told the Sheriff, "This smells like marijuana", you know, "here at the back" which they was green trash bags and you could see clear like there. I put my nose, my head, down there to where the trunk was bowed open and the Sheriff did too and he said he believed it was marijuana too. We told the wrecker driver and all of them to come up to the jail house, follow us up to the jail house.'

Even though he said he smelled it, he did not see any marijuana until after a complete search of the car at the jail."

Petitioner further shows that she was previously released on bond following her October 11, 1979, arrest; that she has voluntarily appeared at all court appearances; that this is her first conviction; and that, following the conviction, the state interposed no objection to her motion to the trial judge for bail pending appeal to be set.

Petitioner is twenty-six years old and has been a resident of Wilton Manors, Florida for approximately five years. She is married and has a nine year old son.

■ The initial determination for the court is whether a state prisoner can petition this court for habeas corpus relief solely on the question of bail pending exhaustion of state remedies on the merits of her conviction and sentence. The court finds that such relief is authorized. In *Dawkins v. Crevasse*, 391 F.2d 921 (5th Cir. 1968), the Fifth Circuit Court of Appeals held that the petitioner's appeal to the state appellate

courts was not so lacking in merit or frivolous as to warrant denial of bail pending appeal. In *Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968), the court of appeals reached a similar result adding that a failure to grant bail where petitioner was sentenced to a 120-day jail term would render ineffective his direct appeal, in that his sentence would have been served by the time the state courts could act. Finally, in *Calley v. Callaway*, 496 F.2d 701 (5th Cir. 1974), the court of appeals held that bail should be granted to a military prisoner pending postconviction relief where the prisoner has raised substantial constitutional claims upon which he has a higher probability of success, and also when extraordinary or exceptional circumstances exist which makes the grant of bail necessary to make the habeas remedy effective. District courts within Georgia have concluded that a one year sentence for selling marijuana, *Goodman v. Ault*, 358 F.Supp. 743 (N.D.Ga. 1973); and a three year sentence for possession of marijuana with intent to distribute, *Gilleland v. Stynchcombe*, C.A. No. 76–346A (N.D.Ga. June 4, 1976), have been held to present exceptional circumstances justifying the district court's determination of an appropriate bond.

■ On the question of whether the appeal taken by petitioner is frivolous, the court need not answer the question, because in the state trial court's order of October 9, 1980, the trial judge concluded that an appeal taken by petitioner would not be frivolous or taken for delay only. The court agrees with this determination of the state trial judge. For example, petitioner's allegation of Fourth Amendment violations presents for state appellate review substantial questions such as whether the Sheriff possessed the probable cause necessary to instigate the search, *See, Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56

L.Ed.2d 525 (1978); whether this automobile search falls within one of the exceptions to the constitutional concept requiring search warrants, *See, Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); whether one in possession of contraband stored in green, opaque, garbage bags is entitled to an "expectation of privacy", *See, Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); and whether the contents of the plastic bags were in "plain view," thereby obviating the need for a warrant, *See, Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).[1] The existence of these questions amply supports the state trial judge's determination that petitioner's appeal is not frivolous or taken for delay.

■ A second reason requires this court to review the state court's denial of bond pending appeal. While this district court does not like to oversee or interfere with state courts in matters pertaining to bail pending appeal, such supervision is nevertheless demanded when a state implements a procedure for the determination of bail, and a petitioner files for habeas corpus relief in this court claiming that the State, in failing to follow its own procedures, violated her due process rights under the Fourteenth Amendment. *See, United States, ex rel. Walker v. Twomey*, 484 F.2d 874 (7th Cir. 1973); *United States, ex rel. Means v. Solem*, 440 F.Supp. 544 (S.D.S.D.1977); *Finetti v. Harris*, 460 F.Supp. 1069 (S.D.N.Y. 1978). In *Birge v. State*, 238 Ga. 88, 230 S.E.2d 895 (1976), the Supreme Court of Georgia adopted a procedure for the trial judges of Georgia to follow in considering applications for bail pending appeal. The four-factor test delineated by that court provides:

"Release should not be granted unless the court finds that there is no substantial risk the appellant will not appear to

---

1. In examining under *Dawkins, Boyer*, and *Calley, supra*, whether bail should be granted pending state appellate remedies, the court must be careful not to decide the merits of petitioner's state appellate claims. The inquiry is not whether a defendant would prevail on state appeal, but whether a reviewing court, either the state appellate courts or the Supreme Court, *could* rule favorably upon petitioner's appellate claims. *See, Gilliland, et al. v. Stynchcombe, supra*. To attempt to hold otherwise would effectively strip the state appellate courts of their powers of direct appellate review.

answer the judgment following conclusion of the appellate proceedings and that the appellant is not likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice, and that the appeal is not frivolous or taken for delay." Id., at 897. The rule adopted by the Georgia courts combines the standards applied by the federal courts as codified in 18 U.S.C.A. § 3148 with the standards recommended by the American Bar Association found in ABA Standards, Criminal Appeals § 2.5(a) and (b) (1974).

■ In reviewing the order of the state trial judge, the court must determine whether the state trial judge's conclusions that petitioner would flee the jurisdiction of the court and that she would pose a substantial danger to others in the community, were arbitrary and not supported by the facts presented. *See, United States ex rel. Walker v. Twomey, supra.* The court finds that each conclusion is arbitrary and unwarranted under the facts. In each case the state trial judge merely assumed that one convicted of crime and sentenced to serve three years in prison, who lives outside the state of Georgia, will not return to the state upon exhaustion of appellate remedies, or that one who possesses a "huge amount of marijuana" is more likely to present great risks to the public. Both assumptions are in the instant case conclusory and not based on fact. While the court in *Birge* placed the burden of seeking release pending appeal upon the appellant, the court noted that a trial judge may consider all the evidence adduced at trial that is pertinent to such a determination in addition to such other oral and documentary evidence that he may consider appropriate. *Birge, supra.* In the instant case the trial judge did not consider petitioner's prior appearances, the fact that she had no prior convictions, or the willingness of her brother to post as security for a bond his home and his business. The court likewise could have questioned the petitioner at the bail hearing on any matter which would have assured the court that she would return to the jurisdiction of the court following exhaustion of appellate remedies or that she would not pose a risk to the public. See, *United States v. Hawkins,* 617 F.2d 59 (5th Cir. 1980); *United States v. Miranda,* 442 F.Supp. 786 (S.D.Fla.1977), *rev'd on other grounds,* 593 F.2d 590 (5th Cir. 1979). In sum, the order of the state trial judge served to arbitrarily deny petitioner the right to have an appropriate bail set in accordance with state law.

■ Having concluded that petitioner is at least entitled on direct appeal to raise substantial Fourth Amendment questions, which if successfully argued on appeal would require a new trial on the merits of her case, and that petitioner is entitled to have her motion for bond pending appeal decided in a non-arbitrary fashion, the court must allow petitioner's motion for release pending exhaustion of her state and federal remedies. The question of the amount of bond would be more appropriately determined by a United States Magistrate.

Petitioner's motion for release pending exhaustion of her state remedies is therefore GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the Respondent deliver and release the petitioner to the custody of the United States Marshal at 11:00 a. m., Monday, November 10, 1980, at the United States Courthouse in Macon, Georgia, and

IT IS FURTHER ORDERED that the United States Marshal present the petitioner before a United States Magistrate for the setting of a reasonable appeal bond.