**E. K. WILCOX, Petitioner,**

v.

**G. Robert CARTER, Sheriff, Lowndes County, Georgia, Respondent.**

**Civ. A. No. 82–66–VAL.**

United States District Court, M. D. Georgia, Valdosta Division.

Aug. 20, 1982.

Wilby C. Coleman, Valdosta, Ga., for petitioner.

H. Lamar Cole, Dist. Atty., Valdosta, Ga., for respondent.

---

**1044**

## ORDER

OWENS, Chief Judge.

Petitioner E. K. Wilcox, Jr., following his January, 1982, jury trial and January 14, 1982, conviction in Lowndes Superior Court for the August 31, 1972, murder of Helen Hanks, filed a notice of appeal to the Supreme Court of Georgia and applied to the trial judge to be released on bail pending appeal. Following a hearing the trial judge denied bail pending appeal, petitioner was jailed, and petitioner filed an additional notice of appeal to the Supreme Court of Georgia from that adverse bail ruling.

On June 15, 1982, petitioner filed his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, to wit:

"(a) The Supreme Court, A Justice thereof, a circuit judge, or *a district court shall entertain an application for a writ of habeas corpus* in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either *an absence of available State corrective process* or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. . . ." (emphasis added).

In this court alleging (a) that the laws of Georgia and the decisions of its highest court—the Supreme Court of Georgia—give him a constitutional right to be released on bail pending appeal in accordance with the criteria found in the Supreme Court of Georgia's decision in *Birge v. State,* 238 Ga. 88, 230 S.E.2d 895 (1976), and to timely appeal the denial of bail pending appeal to the Supreme Court of Georgia; (b) that the trial judge arbitrarily—for no reason whatsoever—denied him bail pending appeal; (c) that the court reporter for the trial court has unreasonably failed to timely prepare and file a transcript of the trial and bail hearing, both of which are required by the Supreme Court of Georgia for consideration of petitioner's appeal of the denial of bail pending appeal; (d) that petitioner has been detained without bail for some six months, and because of the failure of the court reporter to prepare and file transcripts of his trial and bail hearing is unable to complain to this state's highest court; and (e) this court, in the exercise of its responsibility to consider habeas petitions of persons in state custody in violation of the Constitution of the United States, should review the state trial judge's denial of bail, find it to be in violation of his constitutional rights and order him released on bail pending his appeal to the Supreme Court of Georgia on the merits of his case.

Pursuant to notice and this court's order petitioner was produced by the respondent sheriff, and his petition was heard on June 18, 1982. Respondent denied that petitioner is being unconstitutionally deprived of his right to appeal the denial of bail pending appeal to the Supreme Court of Georgia; filed a just completed transcript of the trial court bail hearing; argued that a defendant convicted in a capital case is not entitled to be released on bail pending appeal because *Birge v. State, supra,* applies just to non-capital felonies; and asserted that this United States District Court should not grant bail pending appeal to the Supreme Court of Georgia.

At the conclusion of said hearing this court, for reasons stated orally and then in writing (Exhibit A), deferred consideration of petitioner's application until August 10, 1982, for the stated purpose of giving the Supreme Court of Georgia an opportunity to consider petitioner's appeal of the denial of bail.

On or about July 29, 1982, the court reporter for the state trial court completed and filed the transcript of petitioner's trial, and it was filed in the Supreme Court of Georgia. On July 30, 1982, the Supreme Court of Georgia affirmed the denial of bail pending appeal saying:

"While a trial judge may have broader discretion to deny appeal bonds in capital case than that authorized by *Birge v. State*, 238 Ga. 88 (230 S.E.2d 895) (1976), cert. den. 436 U.S. 945 [98 S.Ct. 2847, 56 L.Ed.2d 786], it is unnecessary to consider the extent of that discretion in this case. The trial court here found the presence of five *Birge* factors: that the defendant was likely to flee, to obstruct the administration of justice, to intimidate witnesses, to commit other serious crimes, and that the appeal was taken for purposes of delay.

"A finding of any one of these factors is a sufficient ground for denial of appeal bond. A review of the record of the appeal bond hearing reveals that the trial judge did not abuse its discretion in denying the bond.

"Judgment affirmed. All the Justices concur, except Hill, P. J., concurs in judgment only."

Petitioner asked to be further heard, and on August 11, 1982, that hearing was held. The complete trial record having been transcribed and a copy made available to this court, the court limited the hearing to the legal arguments of counsel. At the conclusion the court invited the parties to brief the question of whether or not petitioner's application for a writ of habeas corpus should be denied on account of his failure to attempt to complain to the Supreme Court of the United States pursuant to 28 U.S.C. § 1257 [1] of the Supreme Court of Georgia having denied him bail pending appeal. Those briefs having been received and considered, it is now appropriate for this court to render its decision.

---

[1]. 28 U.S.C. § 1257 provides:

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

(1) By appeal, where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity.

(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

## Jurisdiction of this Court

The jurisdiction—duties, responsibilities, authority—of the United States District Courts comes from laws passed by Congress. In 1867, Congress expanded the jurisdiction of United States District Courts to include the authority to entertain and grant writs of habeas corpus to prisoners in custody in violation of the Constitution or laws of the United States. *See*, 28 U.S.C. § 2241. In more recent years that jurisdiction was further defined and procedural requirements were imposed by the congressional passage of a statutory amendment now known as 28 U.S.C. § 2254. Note § 2254(a), (b) and (c) which provide:

"(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the mean-

---

(3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a State statute is drawn in question on the ground of its being repugnant to the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States."

ing of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented...."

### Exhaustion of State Remedies

In 1943—prior to the enactment by Congress of § 2254—the Supreme Court in *Ex Parte Hawk*, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572, discussed whether or not the words "has exhausted the remedies available in the courts of the State" as now found in § 2254(c) requires that an applicant in addition to proceeding through the highest state court must also apply to the United States Supreme Court for a writ of certiorari before applying to a United States District Court for a writ of habeas corpus. The Supreme Court unanimously decided that:

> "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted. *Tinsley v. Anderson*, 171 U.S. 101, 104, 105, 18 S.Ct. 805 [807], 43 L.Ed. 91, 96; *Urquhart v. Brown*, 205 U.S. 179, 27 S.Ct. 459, 51 L.Ed. 760; *United States ex rel. Kennedy v. Tyler*, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138; *Mooney v. Holohan*, supra (294 U.S. [103], 115, 55 S.Ct. 340, 79 L.Ed. 795, 98 A.L.R. 406); *Ex parte Abernathy*, No. ——, October 18, 1943, 320 U.S. 219, ante, 1, 64 S.Ct. 13 [88 L.Ed. 3] [791], ...." 321 U.S. at 116, at 450, 88 L.Ed. at 574 (emphasis added).

Six years later the Supreme Court, following the passage of § 2254, considered whether or not Congress in enacting § 2254 and requiring exhaustion of state remedies meant to require the pursuit of "all appellate remedies in the state courts and in this Court;" found that Congress did intend to require a petitioner to pursue his appellate remedies in the state courts and in the Supreme Court of the United States and re-affirmed its decision in *Ex Parte Hawk*,

*supra.* It is instructive in this case to note that in so doing the Court stated:

> "... The issue of exhaustion of remedy, however, is not only of vital concern to those who would seek the protection of the Great Writ, but in the case of state prisoners is crucial to the relationship between the state and federal sovereignties in the exercise of their coordinate power over habeas corpus. Doubt respecting this issue should not go unresolved ....

> "The writ of habeas corpus commands general recognition as the essential remedy to safeguard a citizen against imprisonment by State or Nation in violation of his constitutional rights. To make this protection effective for unlettered prisoners without friends or funds, federal courts have long disregarded legalistic requirements in examining applications for the writ and judged the papers by the simple statutory test of whether facts are alleged that entitle the applicant to relief.

> "This favorable attitude toward procedural difficulties accords with the salutary purpose of Congress in extending in 1867 the scope of federal habeas corpus beyond an examination of the commitment papers under which a prisoner was held to the 'very truth and substance of the causes of his detention.' Through this extension of the boundaries of federal habeas corpus, persons restrained in violation of constitutional rights may regain their freedom. But since the 1867 statute granted jurisdiction to federal courts to examine into alleged unconstitutional restraint of prisoners by state power, it created an area of potential conflict between state and federal courts. As it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, the federal courts sought a means to avoid such collisions. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent

powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

"Since habeas corpus is a discretionary writ, federal courts had authority to refuse relief as a matter of comity until state remedies were exhausted. Through this comity, the doctrine of exhaustion of state remedies has developed steadily from cases refusing federal habeas corpus before state trial to a statutory direction that federal courts shall not grant the writ to a state prisoner until state remedies have been exhausted. . . .

\*　　\*　　\*　　\*　　\*　　\*

"The established doctrine was applied to meet the variations presented by the cases. By 1891, it was clear that a federal circuit court committed no error in refusing a writ on the ground that the petitioner had not come to this Court on writ of error; and a great body of cases affirmed this holding that the petitioner should be 'put to his writ of error.'

\*　　\*　　\*　　\*　　\*　　\*

". . . In 1944 the unanimous per curiam opinion of *Ex parte Hawk* stated the fully developed and established exhaustion doctrine in its most frequently quoted form.

'Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted.'

"The doctrine of *Ex parte Hawk* has been repeatedly approved, and in *White v. Ragen*, [324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348], the same Court again unanimously restated that principle in the clearest language.

'Where the highest state court in which a decision could be had considers and adjudicates the merits of a petition for habeas corpus, state remedies, including appellate review, are not exhausted so as to permit the filing of a petition for habeas corpus in a federal district court, unless the federal question involved is presented to this Court on certiorari or appeal from the state court decision.'

"Thus comity, which has constrained the lower federal courts to refuse a grant of the Great Writ when remedies in state courts were still open, brought forth the related rule that lower federal courts ordinarily will not allow habeas corpus if the applicant has not exhausted his remedy in this Court by certiorari or appeal from state courts' refusal of relief on collateral attack.

\*　　\*　　\*　　\*　　\*　　\*

"*Ex parte Hawk prescribes only what should 'ordinarily' be the proper procedure; all the cited cases from Ex parte Royall [117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868] to Hawk recognize that much cannot be foreseen, and that 'special circumstances' justify departure from rules designed to regulate the usual case. The exceptions are few but they exist. Other situations may develop.* Compare *Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. Congress has now made statutory allowance for exceptions such as these, leaving federal courts free to grant habeas corpus when there exist 'circumstances rendering such [state] process ineffective to protect the rights of the prisoner.' 28 U.S.C.A. § 2254, FCA title 28, § 2254.

"In § 2254 of the 1948 recodification of the Judicial Code, Congress gave legislative recognition to the *Hawk* rule for the exhaustion of remedies in the state courts and this Court. This was done by embodying in the new statute the rulings drawn from the precedents. The rulings had been definitively restated in *Hawk.* That case had represented an effort by this Court to clear the way for prompt and orderly consideration of habeas corpus petitions from state prisoners. This Court had caused the *Hawk* opinion to be distributed to persons seeking federal habeas corpus relief from state restraint and the opinion had been generally cited and followed. There is no doubt that Con-

gress thought that the desirable rule drawn from the existing precedents was stated by *Hawk*, for the statutory reviser's notes informed us that

'This new section is declaratory of existing law as affirmed by the Supreme Court. (See *Ex parte Hawk*, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.)'

\* \* \* \* \* \*

"It seems sure that Congress drafted and enacted § 2254 expecting review here in conformity with the *Hawk* rule. Nothing indicates to us a desire on the part of Congress to modify the language. We think the rule of the *Hawk* case that ordinarily requires an effort to obtain review here has been accepted by Congress as a sound rule to guide consideration of habeas corpus in federal courts."

\* \* \* \* \* \*

*Darr v. Burford*, 339 U.S. 200 at 203, *et seq.*, 70 S.Ct. 587 at 590, *et seq.*, 94 L.Ed. 761 at 767, *et seq.*

While the Supreme Court has refined the *Ex Parte Hawk* holding by stating in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) that:

"... We affirm the judgment of the court of Appeals but reach that court's result by a different course of reasoning. We hold: (1) Federal courts have power under the federal habeas statute to grant relief despite the applicant's failure to have pursued a *state remedy not available to him at the time he applies*; the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute. (2) Noia's failure to appeal was not a failure to exhaust 'the remedies available in the courts of the State' as required by § 2254; *that requirement refers only to a failure to exhaust state remedies still open* to the applicant at the time he files his application for habeas corpus in the federal court...." 372 U.S. at 398, 83 S.Ct. at 827, 9 L.Ed.2d at 845 (emphasis added).

*Ex Parte Hawk* remains the Supreme Court's view of the meaning of exhaustion of state remedies.

### Do Special Circumstances Justify Departure from Hawk?

As already indicated, the Supreme Court in *Darr v. Burford* stated that:

"*Ex parte Hawk* prescribes only what should 'ordinarily' be the proper procedure; all the cited cases from *Ex parte Royall* to *Hawk* recognize that much cannot be foreseen, and that 'special circumstances' justify departure from rules designed to regulate the usual case. The exceptions are few but they exist. Other situations may develop. Compare *Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543." 339 U.S. at 210, 70 S.Ct. at 593, 94 L.Ed. at 770.

Is petitioner's case a "special circumstance" that justifies this court's departure from the ordinarily proper procedure of requiring that petitioner apply to the Supreme Court of the United States for a writ of certiorari, 28 U.S.C. § 1257, as he may now do, before applying to this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254?

### Constitutional Right to Bail?

State prisoners do not have an absolute United States Constitutional right to bail pending appeal of their state court conviction. On the other hand, once a state makes provision by statute or by decision of its highest appellate court for state prisoners to be released on bail pending appeal, the Eighth and Fourteenth Amendments to the Constitution of the United States, to wit:

*Amendment VIII*

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

*Amendment XIV*

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall

make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Require that bail not be arbitrarily or unreasonably denied. *Young v. Hubbard*, 673 F.2d 132, 133 (5th Cir. 1982).

In non-capital felony cases—crimes for which the sentence of death may not be imposed—the Supreme Court of Georgia in 1976 ordered the trial judges of this state to give consideration to and base their decisions on questions of bail pending appeal upon specific standards set forth in *Birge v. State*, 238 Ga. 88, 230 S.E.2d 895 (1976). The Supreme Court of Georgia, however, has not required Georgia trial judges to consider specific standards in determining whether or not bail pending appeal in capital felony cases should be granted or denied. As already indicated, the Supreme Court of Georgia in this case found it unnecessary to decide whether or not *Birge* standards apply to applications for bail pending appeal in capital felony cases.

While the Supreme Court of Georgia did not refer to it and neither counsel for petitioner nor the respondent has directed this court's attention to it, the legislature of this state in 1973 enacted the following law:

"6–1005a  Release of accused on bail

In the event the State files an appeal as authorized in this Chapter, the accused shall be entitled to be released on reasonable bail pending the disposition of said appeal *except in those cases punishable by death* and the amount of such bail to be set by the court shall be reviewable on direct application by the court to which said appeal is taken. (Acts 1973, pp. 297, 299)." (emphasis added).

No statute giving a similar right to be released on bail pending appeal in cases punishable by death has been found by this court or cited by counsel in this case. ▪ It therefore seems that the question of bail pending appeal in cases punishable by death remains committed to the discretion of the state trial judge and reviewable upon appeal only when the trial judge abuses that discretion. *See, Sellers v. State of Georgia*, 374 F.2d 84 (5th Cir. 1967).

*This Case Compared to Other Cases*

In some few cases this court and the Fifth Circuit Court of Appeals have allowed state defendants convicted of crimes not punishable by death to be released on bail pending appeal, but neither this court nor the Fifth Circuit Court of Appeals has done so where the state conviction was for a crime punishable by death. *See, Sellers v. State of Georgia, supra; United States ex rel. Fink v. Heyd*, 408 F.2d 7 (5th Cir. 1969); *Grech v. Purdy*, 426 F.2d 304 (5th Cir. 1970); *Ballard v. Texas*, 438 F.2d 640, 641 (5th Cir. 1971) denying bail pending appeal to a state court and *Dawkins v. Crevasse*, 391 F.2d 921 (5th Cir. 1968); *Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968); *Speight v. Whiddon*, 516 F.Supp. 905 (M.D.Ga.1980) granting bail pending appeal to a state court.

*Conclusion in This Case*

▪ This court has read the entire transcript of petitioner's trial and bail hearing. Being of the opinion that this petitioner has neither a federal constitutional nor a state statutory right to bail pending appeal of his conviction for murder—an offense punishable by death; that bail pending appeal of this case is a matter to be decided by the state trial judge in the exercise of his discretion; and that that discretion does not appear to have been abused—this case is not the exceptional, out of the ordinary, "special circumstance" case in which this court should entertain a petition for a writ of habeas corpus prior to total exhaustion of state appellate remedies, including appeal by application for a writ of certiorari to the Supreme Court of the United States from the adverse Supreme Court of Georgia bail decision herein attacked. No such application having been made and denied, petitioner's application is dismissed without prejudice to it being refiled at such time as

an application for a writ of certiorari has been filed, considered and denied by the Supreme Court of the United States.

## EXHIBIT

THE COURT:

First of all, Ladies and Gentlemen, you all are assembled in this United States District Court because Congress in its wisdom has passed a law which is generally referred to as 28 U.S.C. Section 2254 which gives to any person who has been convicted in a state court and is in prison on account of that conviction, a right to come into a United States District Court and allege that he should be freed from the restraint imposed on account of violations of his constitutional rights and of course, when we say constitutional rights, we're talking about rights under the Constitution of the United States. Now, as I say, Congress decided to pass that law. They passed it and in one of the provisions of that law, they used the word "shall" as directed to what a Judge must do. So it's not a matter of choice in the federal system as to whether or not a trial judge will entertain an application for habeas corpus. We are commanded by Congress to entertain them. Now, Congress in passing that law, has stated that the petitioner before coming before a United States District Judge, must exhaust all of his available remedies under State law, which means in common sense language that he must proceed as far as he can in the courts of the State to get the same remedy that he desires in United States Court before it can be addressed by a United States Court. That's the exhaustion provision; he must exhaust all remedies in the courts of this State.

Now, of course, the basic problem here is that frankly, this Court is uncertain as to whether or not this petitioner has exhausted his remedies in the courts of this State on the question of bail pending appeal. There is an unanswered question as to whether or not the cases relied upon, the *Birge* case, by both of you and by the trial judge, applies in a murder case. It does not seem to be mentioned in the *Birge* case. Of course, that is a question that addresses itself to the courts of this State first, and maybe later to a federal court but not necessarily to a federal court. Counsel for the petitioner, the defendant in State Court, has presented this Court with several published decisions of the appellate courts of this State where the courts have insisted that trial judges at the time that bail, after conviction, is considered, make a fresh record as to the facts, not conclusions of fact now, I'm talking about the facts on which they base their decision as to whether or not bail should be allowed. It seems to me that under the circumstances that I have heard, that the appellate courts of this State as to this petitioner have not had the opportunity to consider any of the contentions made to this Court. Whether or not under the rules of the Supreme Court of Georgia that opportunity exists is something I do not know. I think the question can best be answered, however, by the Supreme Court of Georgia if the Justices of that Court wish to answer it. To give the Supreme Court of Georgia an opportunity to consider this entire question, I'm going to hold this matter in abeyance until Tuesday, the 10th day of August, with the understanding that you gentlemen will proceed as promptly as possible to bring this matter to the attention of the Supreme Court of Georgia in whatever manner their rules will permit, including, if the rules don't provide for it, a request at the suggestion of this Court to the Clerk of the Supreme Court of Georgia that this be presented to the Justices and an inquiry be made of them as to whether or not they will now entertain an appeal of the sole question of bail pending appeal. We have no idea, of course, what their response will be. I am confident that that Court can solve its own problems, if it wishes to do so. I think it can better solve State problems than this Court and I truly hope that it will and that it will be unnecessary on the 10th of August at this same hour of 11 o'clock for you gentlemen to again appear, but if the problem in your judgment has not been solved, that is, to the extent—I'm not saying that bail should be granted or denied but at least there's

been an adequate hearing on the matter, then, of course, we can re-assemble at that time and I'll be glad for you gentlemen on both sides to supplement the record and at that time, if you wish to do so, to then contend that the petitioner's rights having been fully exhausted in the courts of this State that bail should then be granted and our Court Reporter will transcribe the Court's remarks and that will be in the form of an Order and I will sign it today and you gentlemen will be furnished with a copy of it. You gentlemen can wait or if not, we will put it in today's mail but I believe that is the appropriate direction to be given to the matter as it now stands in this Court.

We appreciate all of you being here so promptly and we'll hold the matter in abeyance until that date, if you all want to re-appear. Would you please advise the Clerk of the Court, say within a week of that date, as to whether or not you wish to appear so that the Clerk can in turn put it on the calendar and of course, that will be here in this Court. Now, in the meantime, if you gentlemen do appear, at that time I would like to have the Court Reporter present so the Court can ascertain factually what the status of that portion of the matter is.

SO ORDERED, This 18th day of June, 1982.