**M. Gar HODGE, Plaintiff,**

v.

**Ralph STOUT et al., Defendants.**

**Civ. A. No. 3059.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

April 8, 1974.

---

Lodge Evans, Elizabethton, Tenn., for plaintiff.

Walter A. Curtis, Elizabethton, Tenn., and Tom R. Grayson, Jr., Mountain City, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action by the plaintiff Mr. Millard G. (Gar) Hodge for damages for the alleged deprivation by the defendants, directly and through a conspiracy, of his federal civil rights. 42 U.S.C. §§ 1983, 1985(3). Mr. Hodge claims he was deprived of his rights[1] to equal protection and due process of law, Constitution, Fourteenth Amendment, and to be secure in his home against unreasonable search, Constitution, Fourth Amendment. The Court has jurisdiction. 28 U.S.C. § 1343(3). Trial was to the Court without a jury on February 1, 1974.

Mr. Hodge was a water service customer of the Town of Mountain City, Tennessee. His father appears to have reserved in a certain deed in 1942 the right to use water from a stream which served the Mountain City reservoir, and for a time that municipality provided Mr. Hodge with water service without charge. This practice ceased in 1972, although Mr. Hodge continued to contend that he was entitled to free water serv-

ice. Mr. Hodge paid $45 as a fee to tap onto the municipality's water main.

To finance its sewer system, the municipality obtained a loan under the Consolidated Farmers Home Administration Act of 1965, § 306, from the Farmers Home Administration, to construct such system and established a revenue fund account out of which to provide for depreciation and to repay the loan and debt service upon it. An ordinance of the municipality was enacted on May 22, 1969, compelling each property in the municipality, where people live or congregate, to connect with and use the sewer facilities to be constructed by the town, and prohibiting all other types of sewage disposal. Mountain City, Tennessee ordinance no. 758. On the same date, the municipality authorized the issuance of $440,000 in waterworks and sewer revenue and tax deficiency bonds, pursuant to T.C.A. §§ 6–1601—6–1532. The municipality's division of sewage adopted rules and regulations to become effective upon the completion of the project. The second such rule and regulation provides:

\*   \*   \*   \*   \*   \*

As the Town would and will make available the sewage system to any customer using the water system, such customer of water shall also make use of the sewage system. Further, in the event such water customer should fail to do so, the Town shall terminate and/or deny the customer use to water.

\*   \*   \*   \*   \*   \*

The defendant Mr. Thomas E. Hicks, recorder of the municipality, addressed a form letter of April 25, 1973 to approximately 100 property owners in Mountain City,[2] advising them they were required to arrange for payment of the $80 sewer-connection fee[3] before May 25, 1973 " \*   \*   \*   or water service will be dis-

---

1. The plaintiff's further claim that the defendants deprived him of privileges and immunities secured to him by the Constitution was dismissed. See memorandum opinion and order herein of September 27, 1973.

2. Including the plaintiff Mr. Hodge and the defendant Mr. Stout, the mayor of the town.

3. There were provisions that property owners could pay the connecting charge over a three-year period.

continued. * * * " Mr. Hodge paid such fee on May 1, 1973. Mr. Hodge purchased 90 feet of 4″ piping, and on May 9, 1973 reported to Mr. Hicks that he was undertaking to connect his current sewer line onto the main tap and was experiencing difficulty in obtaining a proper flow. He stated he would not "disturb" the foundation of his home at 501 Baker Street in Mountain City by cutting a hole therein sufficient to accommodate a four-inch pipe line to connect with the main tap. He told Mr. Hicks that he had acquired the necessary materials, and if the connection " * * * didn't work * * * ", he would sue the municipality. Mr. Hicks advised Mr. Hodge to seek relief from the mayor and board of aldermen who were to meet May 15, 1973,[4] and that Mr. Hicks would have a representative of the architect and engineering firm installing the system survey the situation and report also at that meeting. Mr. Hodge testified that he made no response to Mr. Hicks' suggestion; whereas, Mr. Hicks testified that he asked Mr. Hodge if he might send an engineer to his home to make the survey before Mr. Hodge made his expenditure, and that Mr. Hodge replied: "That will be fine."[5]

Mr. Stephen B. Rhea, of the aforementioned engineering firm, called at Mr. Hodge's residence on May 10, 1973, with Mr. Lewis R. Manuel, an employee of the municipality's sewer department. The defendant Mr. Grant Walker, foreman of that department, met Messrs. Rhea and Manuel there to show them the location of the service tap. He then departed the scene. Meanwhile, Mr. Rhea had contacted Mr. Hodge in his dwelling, awaited the latter's completing dressing himself, and then went with Messrs. Hodge and Manuel to the basement of the residence. Mr. Hodge unlocked the combination lock thereupon and accompanied the surveyors inside. Mr. Rhea found that Mr. Hodge's sewer line could be connected with the main tap, and that the line would be six inches underground. Mr. Rhea advised Mr. Hodge that it might be necessary for his crew to return for further investigation, to which Mr. Hodge replied: [6] " * * * That's quite all right, but I am not going to tie-on to the sewer anyway. * * * " [7]

Messrs. Rhea, Manuel and Walker returned to Mr. Hodge's residence on May 14, 1973, in his absence, and made further investigations preliminary to submitting a report to the mayor and aldermen. They did no digging on that occasion, except to implant their surveying instruments.

Nonetheless, a day or so afterward, Mr. Hodge requested Mr. Walker to check to see if his connecting line would work. He advised Mr. Hodge that he could not ascertain whether the line would work; that Mr. Hodge should run his line, and if it would not work, " * * * the City will do whatever is necessary to make it work. * * * " When Mr. Walker returned to the Hodge premises, the area around the service tap had been filled in, and the area around his septic tank had been partially refilled, but the line emerging from the residence was exposed.

Mr. Hodge appeared at the aforementioned meeting of the town mayor and aldermen on May 15, 1973. All the defendants were present, although Mr. Walker was present for only the latter part of the meeting. Mr. Hodge com-

4. Mr. Hodge's problem was placed on the agenda of that meeting.

5. After two days of hearing Mr. Hodge testify, this Court finds that Mr. Hicks' version of Mr. Hodge's continuing to talk is more likely so than not so.

6. Mr. Hodge testified that he did not give his consent for the surveyors to return, " * * * although I may have said,

'Come back and see me' * * * " in a social vein.

7. Prior to the election in which most of the defendants were seated, Mr. Hodge complained to the defendant Mr. Harry Wills that his (Mr. Hodge's) water service would be cut off unless he connected to the municipal sewer and claimed he was entitled to free water service.

plained that he would not agree to cutting the aforementioned hole in his foundation to obtain sufficient elevation to cause sewage to flow from his dwelling into the main sewer line. He asked the mayor and aldermen to re-route the line so that such aperture would not be necessary. The defendant Mr. Gentry responded that the municipality had no funds available for such re-routing. Mr. Walker then advised of the surveyor's findings, *supra*, and that the hole would not damage the foundation involved. The defendant mayor Mr. Stout advised Mr. Hodge to complete the work, and if the sewer failed to operate and damaged his foundation, the municipality would assume all cost thereof. The decision of the board was that Mr. Hodge would either notify the municipality by May 18, 1973, the name of the person who would do the connecting work or his water service would be discontinued.[8]

On the following morning, Mr. Hodge appeared at the office of the city recorder. There, in the hearing of two witnesses, Mr. Hodge told Mr. Hicks not to wait until May 18, but to proceed immediately to cut-off his water;[9] that he was not going to connect to the sewer line, and he demanded the return of his $80 connecting fee. Mr. Hicks asked Mr. Hodge to reconsider, but stated he was bound by the city council's decision of the preceding evening and could not refund the sewer-connection fee without authority from the mayor and aldermen.[10] Without further hearing, the water service of Mr. Hodge and other property owners was cut-off on May 21, 1973.

This lawsuit was commenced on May 29, 1973. On June 28, 1973, Mr. Hodge asked Mr. Hicks to connect the sewer line from his residence to the main sewer line. The connection was made July 3, 1973 after the tap had been lowered. Mr. Walker inspected the installation on July 7, 1973 and has received no complaint since concerning the flow of sewage therein.

The plaintiff's witness Mr. Roy Holliway, a neighbor of Mr. Hodge, testified that his dwelling was not connected to the main sewer line until after May, 1973; however, it appears that prior to May 10 of that year, a commitment had been made for the connection to be accomplished. At least one-half dozen of the 583 properties, for which sewer taps are available in Mountain City, have lost their water service by virtue of not arranging for sewer taps.[11]

During the period in which Mr. Hodge had no municipal water service, he procured a garbage can and some jugs and made 22 trips hauling water from other of his properties located 3.3 miles from his residence. He testified that each of these trips required him to expend some 1½ hours each, although he would spend some of that time visiting with other persons. He transported water in five-gallon pails from a branch near his residence for use in flushing the commode, etc., and paid 50¢ each for the privilege of taking a shower in a local hotel. When this service was no longer offered, he drove some 19 miles and bathed in Watauga Lake. He estimated that he had expended and lost some $500 to $600 because of the defendants' conduct and

---

8. This was announced by the defendant Mr. Wells, who was chairman of the municipality's water and sewage departments.

9. Mr. Hodge's version is that he said: "* * * If you fellows want to cut-off my water, go ahead and cut it off. I am not going to disturb the foundation of my house and bring sewer lines on the top of the ground in my backyard. * * * I could have said I didn't intend to hook-on to the sewer. * * *"

10. Under the aforementioned rules and regulations, the tapping fee is for the connection. It would appear to "run with the property" and not be refundable.

11. These included the American Legion home, a residence belonging to the First Baptist Church, and a business house of Mr. J. D. Ashley. The defendant mayor Mr. Stout obtained a sewer tap for his place of business after the pretrial hearing of June 26, 1973, in which the plaintiff's motion for a preliminary injunction was denied.

stated that he was made to feel that he was the "blacksheep" of the town, " * * * because no one else's water had been cut-off. * * * " He added that he had heard of only one other place, a business-house, where water had been cut-off due to failure to attach to a sewer line. Mr. Hodge conceded that the defendant-mayor Mr. Stout had told him that, if he hooked-on to the sewer line and got no service, the city would pay him the full expense thereof.

On this record, the plaintiff Mr. Hodge claims damages from the defendants and the right to the injunctive power of this Court for the alleged deprivation by them of his rights to equal protection and due process of law and of his right to be secure in his dwelling against unreasonable search.

■ The Court finds that the plaintiff Mr. Hodge was not denied equal protection of the laws, Constitution, Fourteenth Amendment. " * * * So long as the law applies to all alike, the requirements of equal protection are met. * * *." Louisiana v. Resweber (1947), 329 U.S. 459, 465, 67 S.Ct. 374, 377, 91 L.Ed. 422, 427 (headnote 8). There is no evidence from which to reasonably conclude that the pertinent statutes, ordinance, rules and regulations of the town of Mountain City were applied any differently to Mr. Hodge than to other affected citizens of the municipality.

■■ The Court further finds that there was no unreasonable search in violation of the Constitution, Fourth Amendment. The plaintiff Mr. Hodge, expressly or impliedly, gave the defendants Messrs. Rhea, Manuel and Walker permission to return for further investigation. Even if Mr. Hodge did not intend to give his permission, " * * * a trespass to property, negligent or intentional, is a common law tort and does not infringe the federal Constitution. It was not intended by the Fourteenth Amendment and the Civil Rights Acts that trespass to property, normally within the exclusive cognizance of the states, would become a matter of national concern. * * * " Commonwealth of Pa. Ex rel. Feiling v. Sincavage, D.C.Pa. (1970), 313 F.Supp. 967, 970 [2, 3].

■■ Finally, the Court finds that Mr. Hodge was not denied either procedural or substantive due process of the law. Constitution, Fourteenth Amendment. T.C.A. § 6–1403 expressly allows Tennessee municipalities, which issue bonds payable from revenues from sewer services, to require property owners to connect to the municipal sewer and to further refuse water service to a property owner who does not connect to the sewer. Contrary to the contention of the plaintiff, subsection (1) thereof expressly provides for 30 days' notice to be given before water service may be turned off for failure to comply. Also contrary to the plaintiff's contention, the letter of April 25, 1973 from Mr. Hicks provided the requisite notice, and as was noted *supra*, Mr. Hodge was in fact accorded a hearing on May 15, 1973. The municipal decision to stop water service to Mr. Hodge was neither arbitrary nor capricious. The goals to be achieved by enactments such as the ordinance under consideration herein are " * * * to protect the public health of persons residing within congested areas, and in order to assure the payment of bonds issued for sewer purposes * * *." T.C.A. § 6–1403. The Court finds that these are legitimate goals; that, consequently, the legislative action is not so arbitrary as to violate the due process clause of the Constitution, Fourteenth Amendment. See Richardson v. Belcher (1971), 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231, 236 [10].

It is the resulting decision of the Court herein that the plaintiff take nothing from the defendants. Rule 58(1), Federal Rules of Civil Procedure.