Daniel Preston RUCKER, Petitioner,

v.

J.H. ROSE, etc., et al., Respondents.

Civ. A. No. 3:83–0083.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 27, 1983.

Supplemental Memorandum Opinion
Feb. 14, 1983.

Daniel Rucker, pro se.

Wayne Uhl, Asst. Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM OPINION, ORDERS AND CERTIFICATE

NEESE, Senior District Judge, sitting by designation and assignment.

The petitioner Mr. Daniel Preston Rucker, in custody of the respondent-warden pursuant to the judgment in 1945 of an unspecified Court of the state of Tennessee as well as pursuant to the subsequent judg-

ment of the Criminal Court of Blount County, Tennessee, applied *pro se* to this Court for the federal writ of habeas corpus, claiming, that such is in violation of the Constitution, Fourteenth Amendment.[1] 28 U.S.C. § 2254(a). Annexed to such petition is the applicant's affidavit that he is unable to pay the fees and costs of this proceeding or give security therefor and his statement of his belief that he is entitled to redress. 28 U.S.C. § 1915(a). Therefore, he hereby is

AUTHORIZED to commence and prosecute this proceeding without prepayment of fees or costs or the giving of security therefor. *Id.*

The crux of the applicant's complaint of federal constitutional deprivation appears to relate to earlier judicial decisions which he claims are in diametrically-opposed contradiction. He was convicted in 1945 of rape and sentenced to a term of life imprisonment; while serving that sentence, he escaped from custody; and, while in the status of an escapee, he committed the felony of attempting to commit an armed robbery, for which he was again convicted and again sentenced, this time to a term of five years.

The applicant applied to the Criminal Court of Davidson County, Tennessee for the state writ of habeas corpus. " * * * On April 26, 1978, an agreed order was entered in the trial [hearing] court wherein it was ordered by that court that the Appellant [applicant, here] would not be required to serve any more time on the [his] life sentence and that he would be eligible for parole on the five (5) [-]year sentence after serving the minimum time required by law for the [i.e., 5-year] sentence. * * * " *Rucker v. State,* 556 S.W.2d 774, 775 (Tenn.Ct.Crim.App.1977), *cert. den.* by Supreme Court of Tennessee (1977).

The applicant observes that his initial (life) sentence lacked any date of expiration, but that he would have become eligible for conditional release on parole after

he had served 13 years, 7 months of such term. His escape appears to have occurred before he had served the immediately-above portion of his life-sentence.

A statute of the state of Tennessee provides:

If any inmate serving a term in the state penal system shall commit a felony while he is an escapee from such institution, he shall upon conviction and sentencing, commence the new sentence only after the expiration of all present sentences due to be served.

T.C.A. § 41–726 (1973). A literal application of the foregoing statute, thus, would have required the applicant, as an inmate serving a term in the state penal system who committed a felony while he was an escapee from the institution of his incarceration, upon his second conviction and second sentencing, to have commenced such second sentence only after the expiration of his earlier life-sentence which, as contended by the applicant, had no time of expiration.

" * * * The Board of Pardons and Paroles apparently did not follow * * * " the aforementioned judicial adjudication, *Rucker v. State, supra;* whereupon, the applicant filed a petition with the Criminal Court of Davidson County, Tennessee, for a mandate, " * * * directing the Board to establish [on the two sentences] a parole date * * * ," claiming that the aforementioned agreed order was " * * * binding on the Board of Pardons and Paroles * * * ," and that the Court of Criminal Appeals " * * * should order the Board of Pardons and Paroles to comply with the order." *Id.* Judge Byers said *inter alia* for the Court of Criminal Appeals of Tennessee:

* * * Upon reviewing the present petition, the trial [hearing] court, in an order entered October 1, 1976, ordered the five (5) [-]year sentence to run consecutive [sic] to the life sentence. The trial judge,

---

**1.** " * * * No State shall * * * deprive any person of * * * liberty * * * without due process of law; nor deny to any person within its juris-

diction the equal protection of the laws." Constitution, Fourteenth Amendment, *supra,* § 1.

by this order, appears to have abrogated the agreed order of April 28, 1976.

\*    \*    \*    \*    \*    \*

\* \* \* A sentence for life does not expire but continues so long as a person serving such sentence lives, or, until a pardon has been granted. *Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891 (1960).

\* \* \* A commutation would also terminate a life sentence. The granting of parole does not terminate a sentence but merely suspends the execution of the penalty thereon. *Doyle v. Hampton, supra.* Therefore, so long as the life sentence remains in effect, service of the five (5) [-]year sentence shall not commence and *eligibility for parole does not exist.* [Emphasis added by the writer.]

\* \* \* The courts have no authority or jurisdiction to terminate a valid sentence of confinement. The authority to grant pardons and commutations of sentences rests solely with the executive authority of this State. Article III, Section 6 of the Constitution of Tennessee, T.C.A. § 40–3501—§ 40–3508. The granting of parole is vested exclusively in the Board of Pardons and Paroles. T.C.A. § 40–3613. Therefore, the agreed order entered in the trial court on April 28, 1976, was void and had no binding effect on the Board of Pardons and Paroles.

The trial court [sic] order of October 1st, 1976, recognized the imperative provisions of T.C.A. § 41–726 and abrogated the order of April 28, 1976.

The petitioner is not entitled to the relief sought. \* \* \*

*Ib.*, 556 S.W.2d at 776[2], [3, 4], [5, 6].

■ The novel insistence of the applicant is that such adjudication rendered him ineligible permanently for conditional release on parole, but that the Tennessee Board of Pardons and Paroles "\* \* \* illegally paroled me in 1981 \* \* \*," when it should have recommended that he receive executive clemency from the Governor of Tennessee; and that: "\* \* \* On June 23, 1982, I was returned to prison as a 'parole violat[o]r.' He complains that: "\* \* \* Neither the U.S. District Court[2] or the State courts have sought to force the Parole Board to comply with the law."

The applicant plainly is not entitled to relief on that contention herein, because his claim is not one violative of the federal Constitution, 28 U.S.C. § 2254(a), *supra.* "\* \* \* The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody. \* \* \*" *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495–496, 93 S.Ct. 1123, 1129[4], 35 L.Ed.2d 443 (1973).

Under the applicant's present petition for the writ of habeas corpus, "\* \* \* 'the only judicial relief authorized [would be either] the discharge of the prisoner or his admission to bail.' \* \* \*" *Parker v. Ellis*, 362 U.S. 574, 575, 80 S.Ct. 909, 910, 4 L.Ed.2d 963 (per curiam, 1960). And, "\* \* \* it is unquestioned doctrine that only the *sentence* [emphasis added by this writer] being served is subject to habeas corpus attack. \* \* \*" *Darr v. Burford*, 339 U.S. 200, 203, 70 S.Ct. 587, 589[2], 94 L.Ed. 761 (1950) (where a state prisoner was serving the first of two sentences, "\* \* \* to run consecutively \* \* \*," *id.*, 339 U.S. at 201, 70 S.Ct. at 589).

The gist of the applicant's claims for relief is that the parole board of Tennessee infringed his federal right to due process of law by placing him on parole when it should not have done so and by revoking thereafter his parole. "\* \* \* Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. \* \* \* This is especially true with

---

**2.** *Cf. Rucker v. Lane*, 452 F.Supp. 245 (E.D.Tenn. 1978), and *Daniel Rucker*, petitioner, *v. Lamar Alexander, Governor, et al.*, respondents, no. 80– 3672 in the Middle District of Tennessee, Nashville Division (1981).

respect to the sensitive choices presented by the administrative decision to grant [or reject] parole release.

" * * * A state may, as [Tennessee] has, establish a parole system, but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public interest, purposes of rehabilitation and deterrence [footnote references omitted], the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. * * * In parole release, * * * few certainties exist. In each case, the decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record[-]facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. The latter conclusion requires the Board to assess whether, in light of the nature of the crime[s], the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice. The entire inquiry is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings.

* * * * * *

"A * * * difference between discretionary parole release from confinement and *termination* [as in original] of parole lies in the nature of the decision that must be made in each case. * * * [T]he parole-revocation determination actually requires two decisions: whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit. * * * 'The first step in a revocation decision thus involves a wholly retroactive factual question.' * * *

**3.** *Greenholtz* was cited and quoted-from in *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261,

"The parole-release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisibility of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual [or which he or she may *think* is favorable]. The parole-determination * * * may be made

'for a variety of reasons and often involve[s] [as in original] no more than informed predictions as to what would best serve [correctional purposes] [as in original] or the safety and welfare of the inmate.' * * *

The decision turns on a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.' * * *

* * * * * *

" * * * '[T]here is a human difference between losing what one has and not getting what one wants.' * * * *Greenholtz v. Inmates of Nebraska Penal & Cor.*, 442 U.S. 1, 7–10, 99 S.Ct. 2100, 2104[2], [3, 4], 2105[5], 60 L.Ed.2d 668 (1979).[3] Whatever "hope" the applicant may have had that he would not be placed on parole or have it revoked for his misconduct is " * * * a hope which is not protected by due process. * * * *" *Ib.*, 442 U.S. at 11, 99 S.Ct. at 2105.

Finally, the applicant does not even shadow forth a federal claim of deprivation of the equal protection of the laws as applied to him; the constitutionality of a state's power to fix, grant, deny, or revoke parole " * * * is too well established to require further discussion. * * * *" *Bennett v. People of the State of California*, 406 F.2d 36, 38[3] (9th Cir.1969), *cert. den.*, 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969), citing *inter alia Dreyer v. Illinois*, 187

63 L.Ed.2d 552 (1980).

U.S. 71, 83, 23 S.Ct. 28[32], 47 L.Ed. 79 (1902). " * * * 'So long as the law applies to all alike, the requirements of equal protection are met.' * * * " *Hodge v. Stout,* 377 F.Supp. 131, 135 (E.D.Tenn.1974), quoted in *Buda v. Saxbe,* 406 F.Supp. 399, 404 (E.D.Tenn.1975) (both *per* Neese, J.).

It appearing plainly on preliminary consideration from the face of the applicant's petition and the exhibits annexed to it that the petitioner is not entitled to any relief in this Court, his application hereby is

DISMISSED summarily. Rule 4, 28 U.S.C. fol. § 2254. The clerk forthwith will so notify the petitioner. *Id.* A copy of the petition and of this order shall be served forthwith by the clerk by certified mail on the respondent and the attorney general and reporter of Tennessee. *Id.*

Should the applicant give timely notice of an appeal from the judgment to be entered herein, Rule 58(1), F.R.Civ.P., he is authorized to proceed thereon in forma pauperis. Rule 24(a), F.R.App.P. Any such notice will be treated also as an application for a certificate of probable cause. Rule 22(b), F.R.App.P. As the petitioner is serving a term of life imprisonment with another sentence to follow consecutively, and because of the first aforementioned judicial decision, such certificate WILL issue. *Id.*

## SUPPLEMENTAL MEMORANDUM OPINION

This Court entered a final order on January 27, 1983 in this habeas corpus proceeding. Therein, the petitioner was authorized to proceed on any timely notice of an appeal to the United States Court of Appeals for the Sixth Circuit in forma pauperis and granted (conditioned on such giving of a timely notice of appeal) the petitioner a certificate of probable cause. *Id.*

■ Since that date, the petitioner has filed several documents, the crux of which is that this Court was wrong in its aforementioned order. This Court has no authority to act further in this matter now that its final order has been entered.

■ That order is appealable by the petitioner, 28 U.S.C. § 2253, now that a certificate of probable cause has been ordered to issue conditionally; however, notice thereof must be filed, Rule 3(a), F.R.App.P., timely, Rule 4(a)(1), F.R.App.P. ("the notice required by Rule 3, [, *supra,*] shall be filed with the clerk of the district court within 30 days after the date of entry of the * * * order appealed from * * * )"; *see Browder v. Director, Dept. of Corrections of Ill.,* 434 U.S. 257, 264, 98 S.Ct. 556, 561[3], 54 L.Ed.2d 521 (1978) ("This 30 days time limit is 'mandatory and jurisdictional.' ") On any such timely appeal, the appellate court may consider any issue previously considered by the courts of Tennessee which was presented to this Court and which provides a ground for reversal of this Court's order as well as any issue which would be ground for affirmance of such order of this Court. *United States ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766[6] (3d Cir.1978).